UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STEVEN SANCHEZ,                                    :

                Petitioner,        :          10 Civ. 7719 (PKC) (AJP)

        -against-                         :          **REPORT AND RECOMMENDATION**

WILLIAM LEE,                                       :

                Respondent.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable P. Kevin Castel, United States District Judge:**

         Represented by the Office of the Appellate Defender, petitioner Steven Sanchez seeks a writ of habeas corpus from his May 11, 2004 conviction in Supreme Court, Bronx County, for second degree (depraved indifference) murder and sentence of eighteen years to life imprisonment. (Dkt. No. 2: Sanchez Pet. ¶¶ 1-5.) Sanchez's habeas petition asserts that, given the changes to New York's depraved indifference murder case-law subsequent to his trial, the trial evidence was insufficient to support Sanchez's conviction for depraved indifference murder "as that offense was defined on the date Mr. Sanchez's state conviction became final." (Sanchez Pet. ¶ 12 at p. 7-11; Dkt. No. 3: Sanchez Br. at 29-68.)[1/]

         For the reasons set forth below, Sanchez's habeas corpus petition should be <u>DENIED</u>.

---

[1/]      While Sanchez's petition also includes the claim that his trial counsel, Lynne Stewart, was ineffective for failing "to make a specific motion to dismiss the depraved indifference count at the conclusion" of trial (Sanchez Pet. ¶ 12 at p. 8, 11, 13), this claim was not intended "as a free-standing basis for federal habeas relief but as 'cause' for the alleged procedural default" (Dkt. No. 13: Sanchez Traverse at 19).

## FACTS

On the early morning of July 13, 2002, Gregory Bright and Jason Maldonado drove Jessica Herrera and her friend to the vicinity of Taylor and Van Nest Avenues in the Bronx.  (Dkt. No. 3: Sanchez Br. at 10; Dkt. No. 11: State Br. at 2.)  When they arrived, Steven Sanchez, Herrera's boyfriend, ran to her, started arguing with her and either "mushed" or slapped her.  (Sanchez Br. at 12 & n.4.)  Maldonado got out of the car to confront Sanchez, but fell back into the car and told Bright to drive to the hospital because he had been stabbed.  (Sanchez Br. at 12-14; State Br. at 2.)  Inside the car, Maldonado pulled a large knife out from his abdomen and Bright saw Maldonado's intestines protruding through the wound.  (Sanchez Br. at 14; State Br. at 2.)   Bright drove to Lincoln Hospital where Maldonado died from his injuries.  (Sanchez Br. at 1, 8, 14-16; State Br. at 2.)

### The Trial

On March 8, 2004, Sanchez proceeded to a jury trial before Justice Martin Marcus. (Dkt. No. 10: Trial Transcript ("Tr.") 1.)

#### The Prosecution Case at Trial

Gregory Bright had known Jason Maldonado his whole life; they were as close as brothers.  (Bright: Tr. 109-10, 151-52, 162.)  At approximately 6:00 a.m. on July 13, 2002, Bright's brother asked him to drive Maldonado to Maldonado's home at 198th Street and Grand Concourse in the Bronx.  (Bright: Tr. 110-12, 165.)   After arriving, Maldonado and Bright were talking in the car when they saw two girls standing outside.  (Bright: Tr. 112-13.)  One of the girls, Jessica Herrera, was talking on her cell phone.  (Bright: Tr. 113-14.)  A local rap artist known as Cuban

Link asked Bright to drive the girls home.  (Bright: Tr. 113.)  The girls asked Bright if he was a cabby, but despite his denial, the girls "helped themselves" into the back seat of the car.  (Bright: Tr. 114, 203, 205.)

As Bright drove the girls to Taylor and Van Nest Avenues, Herrera, who appeared intoxicated, began flirting with Maldonado, "showing her thong and stuff like that."  (Bright: Tr. 114-17, 202-03, 207-08, 219-20.)  While in the car, Herrera received a phone call from Sanchez and she told everyone in the car that he was "going to be mad at her" and that "she was going to get hurt when she would get home."  (Bright: Tr. 116-17, 196.)[2]

When Bright pulled up to Taylor and Van Nest Avenues at approximately 6:50 a.m., he saw Sanchez pacing on the corner.  (Bright: Tr. 117-18, 194-96, 199.)  After Bright drove down Taylor Avenue and double parked, Herrera got out of the car, leaving the back passenger door open. (Bright: Tr. 118-21, 143, 197, 208.)  Watching through the open door, Bright saw Sanchez run over to Herrera, start arguing with her and slap her.  (Bright: Tr. 120, 143-44, 177-79, 197, 199-202, 208.) As Maldonado reached back to close the door, Sanchez kicked the door shut, bending Maldonado's arm.  (Bright: Tr. 121, 144-45, 176, 202, 206-07, 209-10, 213-15, 220, 226.)  Maldonado stepped out of the car and started to throw a punch at Sanchez,[3] but before stepping away from the car, Maldonado "arched a little bit," sat down and said "Greg, I got stabbed, take me to the hospital."

---

[2]     Between 4:12 a.m. and 6:32 a.m. on July 13, 2002, Sanchez called Herrera twenty-three times.  (Tr. 236; Binella: Tr. 241-44, 248.)

[3]     Maldonado was not carrying any weapons on him.  (Bright: Tr. 146.)

4

(Bright: Tr. 122-23, 145-46, 179-80.)  Bright saw Sanchez running down the block.  (Bright: Tr. 146-47.)

Inside the car, Maldonado pulled a knife out of the left side of his abdomen, dropped it to the floor and passed out.  (Bright: Tr. 123-25, 147, 181.)  As Bright drove Maldonado to Lincoln Hospital, he could see Maldonado's intestines protruding through the wound.  (Bright: Tr. 124-25, 195.)  Arriving at the hospital, Bright got out of the car and said, "'Yo, help me, my bro's been stabbed.'"  (Lerich: Tr. 40, 47; Bright: Tr. 125.)  EMT Lieutenant David Lerich observed Maldonado in the front passenger's seat bleeding from a knife wound to his abdominal area with two feet of intestines sticking out.  (Lerich: Tr. 40, 42.)  Maldonado eyes were open, but he was extremely pale and not responsive.  (Lerich: Tr. 41-42, 48.)  With the help of other paramedics, Lt. Lerich transported Maldonado into the hospital on a gurney.  (Lerich: Tr. 40-42, 48; Bright: Tr. 126, 172-73.)  Lt. Lerich found a bloody "large kitchen knife" on the floor of the passenger seat, which he put into a bag and gave to a police officer.  (Lerich: Tr. 42-45; Bright: Tr. 126, 170, 172-73; Desposati: Tr. 252.)

After speaking with police officers at Lincoln Hospital, Bright and Lt. Mark Keegan went back to the vicinity of Taylor and Van Nest Avenues in an unmarked police car.  (Keegan: Tr. 53-55; Bright: Tr. 127-28, 167, 170.)  Around 8:15 a.m., Bright saw Sanchez riding in a white livery cab driving down Taylor Avenue, and the police arrested Sanchez.  (Keegan: Tr. 59-60; Bright: Tr. 129-31.)

Maldonado died in Lincoln Hospital at 9:50 a.m. (Smiddy: Tr. 94, 98.)  Dr. Monica Smiddy performed the autopsy and noted that Maldonado had one stab wound to the left upper

quadrant of the abdomen, just below the rib cage, and that the wound was two inches long, five to six inches deep and had a "V-shaped configuration."  (Smiddy: Tr. 80, 83-85, 87, 90, 96, 100-01.) The shape of the wound indicated that either Maldonado was turning or swinging when he was stabbed or that Sanchez twisted the knife while stabbing him.  (Smiddy: Tr. 84, 95-96.)  The knife wound perforated major blood vessels causing "significant amount of internal blood loss" leading to hemorrhagic shock and death.  (Smiddy: Tr. 84-86, 96-97.)[4]

**Sanchez's Defense Case at Trial**

**Jessica Herrera's Testimony**

In July 2002, Jessica Herrera and Sanchez had dated for eighteen months.  (Herrera: Tr. 343, 370, 398.)  On the night of July 12-13, 2002, Herrera went with her friend Maritza Vargas to Club Babaloo in Manhattan. (Herrera: Tr. 343-44, 373.)  After leaving the club at about 4:00 a.m., they went to hang out at Cuban Link's apartment at 198th Street and Grand Concourse for about an hour and a half.  (Herrera: Tr. 345-46, 373, 375-76, 400, 414.)  Herrera, who had been drinking and was "tipsy," received several calls from Sanchez after she left the club.  (Herrera: Tr. 345-47, 365, 376, 382-83, 400-01, 421-22.)  After Herrera and Vargas left Cuban Link's apartment with cab money, Bright and Maldonado asked them if they needed a cab.  (Herrera: Tr. 347-48, 377-78, 410-11.)  The men agreed to drive them to 1602 Taylor Avenue for fifteen dollars.  (Herrera: Tr. 347, 349, 377-78, 383-86.)  At this point, Herrera was "[r]eal tipsy, almost drunk." (Herrera: Tr. 348-49.)

---

[4]     Dr. Smiddy noted that Maldonado did not have any injuries to his hands, wrists, arms or face, and had a blood alcohol content of .04 with no evidence of drugs.  (Smiddy: Tr. 87, 90, 94-95.)

Sanchez called Herrera twice while she was in the car, telling her angrily "that he wanted [her] to come home now." (Herrera: Tr. 349-50, 352, 374-75, 380-81, 403, 415, 421-22.) Herrera told Sanchez that she was coming home and hung up on him. (Herrera: Tr. 381, 383, 422.)

Inside the car, Herrera started flirting with Maldonado and gave him her phone number. (Herrera: Tr. 350-51, 378-80, 386-87, 398, 420-21.) When they arrived at Taylor Avenue, Herrera saw Sanchez walking towards her from the corner. (Herrera: Tr. 352-54, 388-89.) As Herrera got out of the car, Sanchez approached her angrily and said "oh, you're coming home at this time." (Herrera: Tr. 353-54, 389.) Sanchez "mushed" her in the face, but did not strike or slap her. (Herrera: Tr. 353-54, 357, 372, 381-82, 389-90, 392, 404-05.)

Maldonado got out of the car, asked Sanchez "'What the fuck are you doing'" and started fighting with Sanchez. (Herrera: Tr. 353, 394-97, 404-06, 409, 416, 418, 422.) Vargas exited the car and tried to move Herrera away from the area. (Herrera: Tr. 355-59, 390-92, 404-05.) Bright never got out of the car. (Herrera: Tr. 407.) Before walking away, Herrera saw Maldonado punch Sanchez in the face. (Herrera: Tr. 357-58, 360, 362, 391, 396-97, 405, 422.) After exchanging punches, the fight stopped suddenly, and Herrera saw Maldonado "looking weird in the face." (Herrera: Tr. 359, 363-64, 394-97.) As she walked closer, Herrera saw a "big" knife sticking out of the side of Maldonado's abdomen. (Herrera: Tr. 359, 362, 364, 393, 409.) Maldonado "jumped in the car," which drove in reverse down the block. (Herrera: Tr. 359, 363-64, 416.) Herrera continued to date Sanchez for about a year after this incident. (Herrera: Tr. 370.)

### Steven Sanchez's Testimony

Steven Sanchez testified that his relationship with Herrera was serious, but that the couple was on the "downside" in July 2002.  (Sanchez: Tr. 440-42, 444-46, 482-83.)  On the night of July 12-13, 2002, Sanchez went with a friend to Jimmy's Café in the Bronx.  (Sanchez: Tr. 444-45, 469, 538-39, 545.)  When Sanchez got home around 4:00 a.m., he called Herrera.  (Sanchez: Tr. 446-47, 469-71, 539, 548.)  Herrera told Sanchez that she was in Club Babaloo in Manhattan and would meet him when she came back to the Bronx.  (Sanchez: Tr. 447-48, 471-76.)

When Herrera did not show up at his mother's house at 1602 Taylor Avenue where he was living, Sanchez started worrying.  (Sanchez: Tr. 443-44, 449-50, 452.)  Sanchez called Herrera several times and was "very, very upset" and "angry" when he finally spoke to her on the phone after 6:00 a.m.  (Sanchez: Tr. 448-51, 474, 476, 484, 490-93, 532.)  Herrera told him that she was at a friend's house and would catch a cab to come meet him.  (Sanchez: Tr. 451, 476, 484, 490.)  While speaking to Herrera on the phone, Sanchez could tell she was intoxicated.  (Sanchez: Tr. 474-75, 484, 495, 532.)

Sanchez went outside to meet Herrera because he did not want to argue with her inside the house.  (Sanchez: Tr. 451-52, 489-90.)  Before leaving, however, Sanchez took the "biggest knife" he could find for protection and put it inside his pants pocket.  (Sanchez: Tr. 451-52, 477, 480-81, 487, 524, 532.)[5]  Sanchez angrily waited for Herrera at the corner of Taylor and Van

---

[5]     Sanchez was scared to go outside since he had been stabbed in the back years earlier and his cousin was shot and killed in a dispute over a girl.  (Sanchez: Tr. 428-29, 431-33, 452, 477-78, 555-59.)

Nest Avenues.  (Sanchez: Tr. 452-53, 461-62, 487-90, 532.)  As he was waiting, Sanchez saw a

black car pull up in the middle of the block and Herrera exit the back seat of the car.  (Sanchez: Tr.

453, 462, 488-89.)  Sanchez walked up to her, started arguing and yelling at her for being late and

"mushed" her in the face.  (Sanchez: Tr. 453-54, 462, 494-504.)  Sanchez was "very angry" and

"upset" as he argued with Herrera, and grabbed her as she tried to walk away.  (Sanchez: Tr. 453-54,

489, 495-96, 498-99.)

Maldonado got out of the car, said "Yo, son, what the fuck you doing," ran up to

Sanchez and punched him in the face.  (Sanchez: Tr. 454-55, 463, 502, 505, 507, 510.)  Bright got

out of the car and joined Maldonado in hitting Sanchez.  (Sanchez: Tr. 455-57, 508-13, 515-19, 540,

543-44, 548-49.)  Sanchez did not see any weapon in Bright's or Maldonado's hands.  (Sanchez: Tr.

458, 514, 523, 548-49.)  Sanchez, who was scared and angry, started getting flashbacks to the time

he had been stabbed.  (Sanchez: Tr. 455-57, 544, 555.)  While Maldonado and Bright were on top

of him, Sanchez took the knife out of his pocket and "waved it around" to "protect" himself and to

"scare them off."  (Sanchez: Tr. 457, 463-64, 515, 519-23, 544, 550-52, 557-58.)  As Maldonado

charged at Sanchez again, Sanchez stabbed him in the abdomen with the foot long knife.  (Sanchez:

Tr. 457, 463, 519, 524-25, 540, 544, 551-53, 557-58.)[6/]  Sanchez did not want to stab Maldonado;

---

[6/]     Among other versions of his testimony, Sanchez stated:  "I pulled out a knife and I tried to
scare them off.  And [Maldonado] kept on towards me, so as he kept on, he get -- I stabbed
him."  (Sanchez: Tr. 457; see also Sanchez: Tr. 544 ("I pulled the knife out and I waved it
around and at that time that's when everything had happened. . . . [Maldonado] had gotten
stabbed. . . . I stabbed him."); Sanchez: Tr. 558 ("I took the knife out . . . and I waved  it
and . . . [Maldonado] ran into it."); but see Sanchez: Tr. 552 (denying that he was claiming
that Maldonado "rammed himself up on the knife.").)

he "wanted to get [Maldonado] away from" him.  (Sanchez: Tr. 557.)  Maldonado stumbled back
into the car, and Sanchez ran to his house down the block.  (Sanchez: Tr. 457-58, 525-28, 530.)
Fearing that they would come back to hurt him, Sanchez took a cab to his friend's house.  (Sanchez:
Tr. 458-59, 528-30.)  When Sanchez returned to his house about thirty minutes later, he saw police
officers on the corner and was arrested in his home.  (Sanchez: Tr. 459-60.)

### Sanchez's Counsel's Motion to Dismiss

At the end of all the evidence, defense counsel made a motion to dismiss specifically
attacking the intentional murder charge:

> THE COURT:  All right. [Defense counsel] Stewart, your motions at the end of the
> People's case.

> MS. STEWART:  Yes, Judge.

> THE COURT:  And also the motion at the end of all of the evidence.

> MS. STEWART:  Right, Judge.  The People have not made out a prima facie case
> of intentional murder.  I think the facts and circumstances of the People's case don't
> make that out.  Even clearly the initial aggressor is the deceased and my client the
> defendant himself -- even if it doesn't rise to the self-defense, it also doesn't make out
> intentional murder as a prima facie case.  And, certainly, now that he has testified
> does not make out, and Miss Herrera has testified confirming that, it still does not
> make out a case of intentional murder.  The fact that the knife never comes out to the
> very -- near the end of this engagement also lends credence to that.  So I would ask
> for a trial order of dismissal of the intentional murder count of this indictment and
> the whole case as well.

> THE COURT:  Okay.

> [A.D.A.] BARKER:  Your Honor, it's the People's position that the testimony clearly
> has met their burden at this stage of the proceeding and now it's up to the jury to
> decide.

THE COURT:  All right.  The evidence is legally sufficient as to each of the counts. <u>I don't hear [defense counsel] Ms. Stewart challenging other than in the most general way the depraved count</u> but with respect to the intentional counts, arming himself with a knife prior to coming downstairs, stabbing the victim with a knife of that size and the location where he was stabbed and the depth of which he was stabbed, there's clearly evidence that there is legally sufficient [evidence] to establish both intent to cause death and intent to cause serious physical injury.

On the justification charge even assuming that the prosecution's case alone raises -- even assuming that the prosecution's case provided enough evidence to raise the defense of justification insofar as there was testimony about the deceased attempting to throw a punch, the jury could certainly conclude that this does not make him an initial aggressor with respect to the use of deadly physical force and certainly would conclude that even if he was the initial aggressor that there was no reasonable -- he could not be held to a reasonable belief that he was required to use -- to protect himself with deadly physical force. So with respect to the intentional counts, the motion is denied both at the end of the People's case and at the end of the entire trial.

With respect to the depraved count, as I say, <u>I don't hear Ms. Stewart challenging directly at any rate the legal[] sufficiency of that count</u> but given the defendant's testimony, it's clear that there is a reasonable view of the evidence to support a non-intentional reckless count and given, again, the location of the wound and the knife that caused it and the depth of the wound, there is certainly legally sufficient evidence to support not only a finding of recklessness but also circumstances evincing a depraved indifference to human life.  So the motion to dismiss each one of the counts is denied.

In terms of what counts I submit to the jury, I take it the People are asking that I submit both of the intentional and depraved counts and the manslaughter count but not criminal possession of a weapon count.

[A.D.A.] BARKER:  That's correct.

(Tr. 561-63, emphasis added).

**Jury Charge and Verdict**

As part of the charge conference, Sanchez's counsel requested that Justice Marcus submit reckless manslaughter to the jury as a lesser included offense.  (Tr. 564.)  Sanchez's counsel also requested a depraved indifference murder charge from New York Defender Digest, noting her concern that the definition of depraved indifference murder had become "almost indistinguishable" from reckless manslaughter and that this confusion had troubled some appellate and habeas courts. (Tr. 564.)[7]

After charging the jury with the elements of intentional murder (Charge: Tr. 664-65), Justice Marcus set out the elements for depraved indifference murder:

> The second count I'm submitting to you charges [Sanchez] with the depraved indifference murder.  And according to the law, a person is guilty of this form of murder in the second degree when under circumstances evincing a depraved indifference to human life he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of that other person.
>
> For these purposes, a person acts recklessly with respect to another person's death when that person engages in conduct which creates a substantial, unjustifiable, grave risk that another person's death will occur and when he is aware of and consciously disregards that risk and when that risk is of such nature and degree the disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
>
> Under our law, a crime committed recklessly is generally regarded as less serious and blameworthy than a crime committed intentionally.

---

[7]    In a subsequent C.P.L. § 440 motion decision, Justice Marcus noted that the New York Defender Digest charge "contained much of the language that the Court used in its charge, which, in turn, included much of the language then recommended by Criminal Jury Instructions, Second Edition."  (Dkt. No. 2: Sanchez Pet. Ex. D-6: 4/2/09 Justice Marcus Decision at 3.)

Reckless conduct is engaged in under circumstances evincing a depraved indifference to human life. The law regards that conduct as so serious, so egregious as to be the equivalent of intentional conduct. Conduct evincing a depraved indifference to human life is much more serious and blameworthy than conduct which is merely reckless.

It is conduct which beyond being reckless is so wanton, so deficient in moral sense and concern, so devoid of regard for the life or lives of others as to equal in blameworthiness [] intentional conduct which produces the same result. It must be eminently dangerous and present a very high risk of death to others.

In determining whether a person's conduct evinced a depraved indifference to human life, a jury would have to decide whether the circumstances surrounding his reckless conduct when objectively viewed made it so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total utter disregard for the life of the person or persons in danger.

Now, combining this definition with the defense of justification, in order for you to find [Sanchez] guilty of the crime of depraved indifference of murder in the second degree, the People are required to prove from all the evidence in the case beyond a reasonable doubt each of the following elements:

One, that on or about July 13, 2002 in the County of the Bronx [Sanchez] stabbed Jason Maldonado; two, that by stabbing Mr. Maldonado [Sanchez] caused his death; three, that [Sanchez] caused Mr. Maldonado's death by recklessly engaging in conduct which created a grave risk of death for Mr. Maldonado; four, that [Sanchez] engaged in this conduct under circumstances evincing a depraved indifference to human life and, five, that [Sanchez's] conduct was not justified.

(Charge: Tr. 665-68). Defense counsel had no objections to the jury charge. (Tr. 566-67, 680-81.)[8]

---

[8]    In response to notes from the jury (Tr. 685-87, 692-93, 704-06, 717-19), Justice Marcus repeated his depraved indifference charge three more times. (Tr. 696-99, 706-11, 725-28.) Defense counsel asked Justice Marcus to give the jury some examples of depraved indifference murder (which he denied), but again had no objections to Justice Marcus' depraved indifference charge. (Tr. 713-14.) The jury's note before the third instruction readback noted that they were "equally divided between the two counts" (Tr. 717-18), presumably the intentional murder and depraved indifference murder counts.

On March 17, 2004, the jury acquitted Sanchez of intentional murder, but found him guilty of depraved indifference murder.  (Tr. 733-34, 742-44.)[9/]

## Sanchez's Motion to Set Aside the Verdict

Prior to sentencing, Sanchez's trial counsel Lynne Stewart moved to set aside the verdict, claiming that Sanchez "cannot be guilty of depraved indifference murder because the extreme recklessness is not made out in the objective circumstances surrounding the act." (Dkt. No. 2: Sanchez Pet. Ex. A-1:  Stewart § 330.30 Aff. at 4-5.)  Stewart further argued that, by arming himself with a twelve-inch knife, Sanchez demonstrated his intent "to do grievous harm and that after a physical confrontation with Jason Maldonado he formed a contemporaneous, instant intent to kill him."  (Stewart § 330.30 Aff. at 5.)  Therefore, Sanchez's counsel asserted, "[i]f it was intentional then it was NOT depraved indifference and the case should be dismissed."  (Stewart § 330.30 Aff. at 5.)[10/]  Sanchez's counsel also argued that the depraved indifference murder statute was unconstitutionally vague when compared with reckless manslaughter.  (Stewart § 330.30 Aff.

---

[9/]   As part of its verdict, the jury put "an X in the box for not guilty" of manslaughter.  (Tr. 734-36.)  Justice Marcus informed the jury that their verdict was "defective" because, given the elements as charged to the jury, "a person who commits depraved indifference murder in the second degree necessarily also commits [reckless] manslaughter in the second degree and cannot be guilty of the first crime and not guilty of the second."  (Tr. 736-41.)  Justice Marcus directed the jury to reconsider this aspect of their verdict, and, if they convicted on the depraved indifference murder count, they should not consider reckless manslaughter.  (Tr. 739-41.)  The jury returned with a verdict finding Sanchez not guilty of intentional murder but convicting Sanchez of depraved indifference murder.  (Tr. 741-44.)

[10/]   Sanchez's current counsel calls the claim that the murder was intentional not reckless an "'unseemly assertion.'"  (Dkt. No. 13: Sanchez Traverse at 18.)

at 6-7.)  Alternatively, Sanchez's counsel argued that his conviction at least should be reduced to

second degree manslaughter.  (Stewart § 330.30 Aff. at 7.)

        Justice Marcus denied Sanchez's motion, ruling that Sanchez's counsel's general

motion to dismiss (see page 9 above) failed to preserve Sanchez's insufficiency claim.  (Sanchez Pet.

Ex. A-3: 5/11/04 Justice Marcus Decision at 2-3.)  Nevertheless, Justice Marcus stated that "[e]ven

if this issue had been preserved," he would deny Sanchez's claim on the merits, finding:

> [T]here was evidence before the jury that [Sanchez], while engaged in a non-lethal
> fist fight with his opponent, and in close proximity to him, took a large knife and
> "wav[ed]" it around blindly, stabbing him with enough force to cause the knife to
> penetrate five to six inches into the victim's abdomen and to cause a two inch wound
> that severed major blood vessels.  The jury could reasonably conclude from this
> evidence that [Sanchez's] actions recklessly created a "grave risk of death" under
> circumstances "evincing a depraved indifference to human life."

(5/11/04 Justice Marcus Decision at 3-6.)  Justice Marcus also denied Sanchez's constitutional

vagueness argument, finding it unpreserved and meritless.  (5/11/04 Justice Marcus Decision at 6-8.)

**Sentence**

        At sentencing on May 11, 2004, Justice Marcus noted that "the death that [Sanchez]

caused was entirely unnecessary," and arose from Sanchez's "anger and jealousy" surrounding his

girlfriend.  (Dkt. No. 10: 5/11/04 Sentencing Transcript ("S.") 18.)  Justice Marcus further noted that

Sanchez "brought the murder weapon to the scene, the largest knife [Sanchez] could find in [his]

kitchen, without necessity and without provocation and [Sanchez's] testimony to the contrary was,

simply put, incredible," that is, was "not the innocent measure of self protection [Sanchez] claimed

it to be."  (S. 18.)  While the jury found that Sanchez did not act intentionally, "the fact remains that

even by [his] own testimony, [Sanchez] waved that knife around in close proximity to [Maldonando]

and [Sanchez] then stabbed him with it hard enough for the knife to penetrate five or six inches into his abdomen and remain protruding from there." (S. 18-19.)  Justice Marcus agreed with the jury that this was "conduct [Sanchez] engaged in with grave recklessness and under circumstances evincing a depraved indifference to human life." (S. 19.)  Justice Marcus sentenced Sanchez to eighteen years to life imprisonment. (S. 20-21.)

**Sanchez's Direct Appeal**

Represented by new counsel (Office of the Appellate Defender), Sanchez's appeal to the First Department argued, inter alia, that the trial evidence was legally insufficient and against the weight of the evidence to support the depraved indifference murder conviction. (Dkt. No. 2: Sanchez Pet. Ex. B-1: Sanchez 1st Dep't Br. at 21-37.)  Sanchez argued, based on New York Court of Appeals decisions issued subsequent to his trial and sentence but while his direct appeal was pending,[11] that "[t]his one-on-one stabbing cannot be characterized as a depraved indifference homicide" since it did not "fit within the 'small and finite, category of cases' that carry the same level of culpability as intentional murder." (Sanchez 1st Dep't Br. at 25.)  Sanchez further argued that the trial evidence did not establish that he acted with the mens rea of depraved indifference, as was required by People v. Feingold, 7 N.Y.3d at 294-96, 819 N.Y.S.2d at 695-97. (Sanchez 1st Dep't Br. at 29.)

---

[11]   Specifically, People v. Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691 (2006), People v. Suarez, 6 N.Y.3d 202, 811 N.Y.S.2d 267 (2005), and People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116 (2004). (See Sanchez 1st Dep't Br. at 23-32.)

On May 24, 2007, the First Department unanimously affirmed Sanchez's conviction,

holding:

> Defendant's sufficiency claim regarding his conviction for depraved indifference murder was not preserved for appellate review.  Although, in response to defendant's generalized dismissal motion, the court briefly summarized some of the evidence, it never "expressly decided" the particular issue raised on appeal, and we decline to review it in the interest of justice.  Were we to review this claim, we would find the verdict was based on legally sufficient evidence, based on the court's charge as given without exception.  We also find that the verdict was not against the weight of the evidence in light of the elements of the crime as charged to the jury without objection.

People v. Sanchez, 40 A.D.3d 468, 468-469, 836 N.Y.S.2d 174, 175 (1st Dep't 2007) (citations

omitted).

On August 27, 2007, the New York Court of Appeals denied leave to appeal.  People

v. Sanchez, 9 N.Y.3d 881, 842 N.Y.S.2d 793 (2007).

### Sanchez's C.P.L. § 440 Motion Arguing Counsel Was Ineffective

On October 9, 2008, through his appellate counsel (Office of the Appellate

Defender), Sanchez filed a C.P.L. § 440.10 motion arguing that trial counsel Lynne Stewart was

ineffective for failing to:  (1) make a specific motion to dismiss the depraved indifference murder

charge; and (2) object to Justice Marcus' depraved indifference murder jury charge.  (Dkt. No. 2:

Sanchez Pet. Ex. D-1: Herbert § 440 Aff. ¶¶ 13-14, 23-27.)  In support of Sanchez's claims,

Sanchez's trial counsel Lynne Stewart submitted an affidavit stating that her failure to move to

dismiss the depraved indifference murder count "was simply an oversight" and not based on "any

strategic or tactical reason."  (Sanchez Pet. Ex. D-1: Stewart § 440 Aff. ¶ 3.)[12]  Similarly, Stewart stated that her failure to object to Justice Marcus' jury charge on depraved indifference also "was an oversight" and not based on any "strategic or tactical reason."  (Stewart § 440 Aff. ¶ 4.)  Stewart further affirmed that, at the time of Sanchez's trial, she was "generally aware of the unsettled state of the law regarding depraved indifference murder and that some courts had found that depraved indifference murder was not adequately differentiated from reckless manslaughter." (Stewart § 440 Aff. ¶ 5.)

On April 2, 2009, Justice Marcus summarily denied Sanchez's § 440 motion in its entirety, ruling that, given the state of the law at the time of Sanchez's trial, the evidence was legally sufficient to support the depraved indifference murder count.  (Sanchez Pet. Ex. D-6: 4/2/09 Justice Marcus Decision at 11-14.)   Justice Marcus ruled that Sanchez's ineffective assistance claims required defense counsel to move to dismiss and object to the jury charge based on the argument that depraved indifference was in fact the mens rea element of the crime, a change in the law that did not occur until People v. Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691 (2006), decided more than two years after Sanchez's trial.  (4/2/09 Justice Marcus Decision at 11-12.)  "By making these claims, [Sanchez] demands prescience from defense counsel which goes far beyond the competency to which he is entitled."  (4/2/09 Justice Marcus Decision at 12-13.)

---

[12]     By the time Stewart filed her affidavit, she already was convicted of providing support to terrorists and disbarred.  (Herbert § 440 Aff. ¶ 3.)  As the State argued in the First Department, "Ms. Stewart is a disbarred former lawyer who, in protecting [Sanchez], risks no consequences to her professional reputation by admitting to allegations of ineffective assistance."  (Sanchez Pet. Ex. E-2: State 1st Dep't § 440 Br. at 28 n.5.)

On June 17, 2010, the First Department affirmed Justice Marcus § 440 decision, noting that, at the time of Sanchez's trial, depraved indifference was not a mens rea element to the crime but rather the "'factual setting in which the risk creating conduct must occur.'"  People v. Sanchez, 76 A.D.3d 122, 126, 904 N.Y.S.2d 24, 26 (1st Dep't 2010) (quoting People v. Register, 60 N.Y.2d 270, 276, 469 N.Y.S.2d 599, 602 (1983), overruled by People v. Feingold, 7 N.Y.3d at 294, 819 N.Y.S.2d at 695).  The First Department found that it was not until People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116 (2004), that the New York Court of Appeals "articulated that depravity is a specific form of recklessness," and not until People v. Suarez, 6 N.Y.3d 202, 811 N.Y.S.2d 267 (2005), that the Court of Appeals "distinguished depravity from recklessness."  People v. Sanchez, 76 A.D.3d at 129, 904 N.Y.S.2d at 28-29.  Only in Feingold, did the Court of Appeals finally rule that depraved indifference is a distinct mens rea element of depraved indifference murder.  People v. Sanchez, 76 A.D.3d at 129, 904 N.Y.S.2d at 29.

   Consequently, the First Department found:

> [Sanchez's] assertion that counsel should have requested a jury charge focusing on his mental state, rather than the objective circumstances, suffers from the same infirmity as his contention that the motion to dismiss should have differentiated between recklessness and depravity; the law, as then constituted, provided absolutely no basis for requesting such an instruction, and [Sanchez] does not suggest what instruction counsel might have requested that would have led to his acquittal on the depraved indifference murder count.

> Insofar as the claim of ineffective assistance is concerned, [Sanchez] has failed, even at this late juncture, to state what objection counsel could have interposed that would have led the trial court, on the basis of then prevailing law, to dismiss the depraved murder count as unsupported by sufficient evidence.  It is immaterial that the law subsequently changed; counsel's performance must be assessed on the basis of the facts and viewed as of the time of the asserted deficiency in representation, without the benefit of hindsight.  Counsel could hardly have been

> expected to anticipate the parameters of subsequent decisions in <u>Payne</u>, <u>Suarez</u>, or certainly <u>Feingold</u>, that [Sanchez] now relies on in stating that the evidence of depraved indifference was insufficient.

<u>People</u> v. <u>Sanchez</u>, 76 A.D.3d at 129-30, 904 N.Y.S.2d at 29 (citations omitted).

On September 2, 2010, the New York Court of Appeals denied leave to appeal.

<u>People</u> v. <u>Sanchez</u>, 15 N.Y.3d 855, 909 N.Y.S.2d 33 (2010).

**<u>Sanchez's Habeas Petition</u>**

On October 7, 2010, represented by the Office of the Appellate Defender, Sanchez filed a federal habeas corpus petition arguing that, given the changes to New York's depraved indifference murder case law subsequent to his trial, the trial evidence was insufficient to support Sanchez's conviction for depraved indifference murder "as that offense was defined on the date Mr. Sanchez's state conviction became final."  (Dkt. No. 2: Sanchez Pet. ¶ 12 at p. 7-13; Dkt. No. 3: Sanchez Br. at 29-68.)  Sanchez also asserts trial counsel's ineffectiveness, not as a stand alone habeas claim, but as "cause" for the alleged procedural default.  (Sanchez Pet. ¶ 12 at p. 8, 11, 13; Dkt. No. 13: Sanchez Traverse at 19; <u>see</u> page 1 n.1 above.)

<u>ANALYSIS</u>

**I.      <u>THE AEDPA REVIEW STANDARD</u>**

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[13/]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning."  Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[14/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."

---

[13/]   See also, e.g., Knowles v. Mirzayance, 129 S. Ct. 1411, 1418 (2009); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc);  Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

[14/]   Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[15/]  "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S. Ct. 1312 (2009).  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

As to the "contrary to" clause:

A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court

---

[15/]    Accord, e.g., Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir.), cert. denied, 130 S. Ct. 642, (2009); Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Portalatin v. Graham, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); Hargett v. Giambruno, 291 F. App'x 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-10 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[16]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[17] However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different

[16]   Accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Portalatin v. Graham, 624 F.3d at 79; Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010); Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d 149, 156 (2d Cir. 2009), cert. denied, 131 S. Ct. 320 (2010); Dunlap v. Burge, 583 F.3d at 164; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[17]   Accord, e.g., Waddington v. Sarausad, 555 U.S. 179, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Bierenbaum v. Graham, 607 F.3d at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009); Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

from an <u>incorrect</u> application of federal law." <u>Id</u>.[18] Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 409, 120 S. Ct. at 1521.[19] "Objectively unreasonable" is different from "clear error." <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). This is a "'substantially higher threshold'" than incorrectness. <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1862; <u>accord</u>, <u>e.g.</u>,

---

[18]    See also, <u>e.g.</u>, <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. 1855, 1862 (2010); <u>Waddington</u> v. <u>Sarausad</u>, 129 S. Ct. at 831; <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002))); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the relevant federal law should have been interpreted differently than the way it was interpreted by the state court yet still conclude that the state court's application of the federal law was not unreasonable."); <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d at 87-88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[19]    Accord, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 128-29.

Knowles v. Mirzayance, 129 S. Ct. at 1420.[20]   Federal habeas relief is precluded "so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

Richter, 131 S. Ct. 770, 786 (2011).

"[T]he range of reasonable judgment can depend in part on the nature of the relevant

rule." Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149.[21]   "Even if the state court issued

_____

[20]   However, the Second Circuit has explained "that while '[s]ome increment of incorrectness
beyond error is required . . . the increment need not be great; otherwise, habeas relief would
be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"
Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.
2000)); accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown
v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable
application' standard 'falls somewhere between merely erroneous and unreasonable to all
reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246;
Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396
F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125;
Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263
F.3d at 184.

[21]   The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant
> rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
> may be plainly correct or incorrect.  Other rules are more general, and their meaning
> must emerge in application over the course of time.  Applying a general standard to
> a specific case can demand a substantial element of judgment.  As a result,
> evaluating whether a rule application was unreasonable requires considering the
> rule's specificity.   The more general the rule, the more leeway courts have in
> reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149; accord, e.g., Harrington v.
Richter, 131 S. Ct. at 786; Renico v. Lett, 130 S. Ct. at 1864; Knowles v. Mirzayance, 129
S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has
even more latitude to reasonably determine that a defendant has not satisfied that standard.");
Portalatin v. Graham, 624 F.3d at 79; Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d at 157;
Dunlap v. Burge, 583 F.3d at 166; Hawkins v. Costello, 460 F.3d at 243.

a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . . unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert. denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

     Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[22]

     Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>accord</u>, <u>e.g.</u>, <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1862 ("AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455, 125 S. Ct. at 853; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d at 519. "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly

---

[22]     Accord, <u>e.g.</u>, <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 47-48; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140-41; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

established law to th[e] record in an unreasonable manner."  <u>Acosta</u> v. <u>Artuz</u>, 575 F.3d 177, 184 (2d

Cir. 2009); <u>accord</u>, <u>e.g.</u>, <u>Georgison</u> v. <u>Donelli</u>, 588 F.3d at 154.  As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . .
> [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decisions conflict with [the
> Supreme] Court's precedents.  It goes no further. . . . As a condition for obtaining
> habeas corpus from a federal court, a state prisoner must show that the state court's
> ruling on the claim being presented in federal court was so lacking in justification
> that there was an error well understood and comprehended in existing law beyond
> any possibility for fairminded disagreement.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786-87.

Even where the state court decision does not specifically refer to either the federal

claim or to relevant federal case law, the deferential AEDPA review standard applies.

> Determining whether a state court's decision resulted from an unreasonable
> legal or factual conclusion does not require that there be an opinion from the state
> court explaining the state court's reasoning.  And as this Court has observed, a state
> court need not cite or even be aware of [Supreme Court] cases under § 2254(d).
> Where a state court's decision is unaccompanied by an explanation, the habeas
> petitioner's burden still must be met by showing there was no reasonable basis for
> the state court to deny relief.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 784 (citations to <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 312, & other

cases omitted); <u>accord</u>, <u>e.g.</u>, <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455, 125 S. Ct. at 853; <u>Early</u> v. <u>Packer</u>, 537

U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even

be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result

of the state-court decision contradicts them."); <u>Wilson</u> v. <u>Mazzuca</u>, 570 F.3d 490, 499 (2d Cir. 2009)

("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's

claim, and when that rejection is on the merits, the federal court will focus its review on whether the

state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[23/]   Even if the federal court holds an evidentiary hearing, the deferential AEDPA review standard applies.  Wilson v. Mazzuca, 570 F.3d at 501-02 ("Where . . . a district court has performed additional fact finding, the court must then ask whether the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' in light of any newly-discovered facts. . . . [W]e are directed to apply the same AEDPA standard that would otherwise be in force, now in light of the new information that has been obtained through a § 2254(e) hearing." (citation omitted)).

       "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. at 784-85.

       Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless."  Howard v. Walker, 406 F.3d at 122.

---

[23/]    See also, e.g., Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.   SANCHEZ'S INSUFFICIENCY CLAIM IS PROCEDURALLY BARRED BY AN ADEQUATE AND INDEPENDENT STATE LAW GROUND

Sanchez claims that, given the changes to New York's depraved indifference murder case-law subsequent to his trial, the trial evidence was insufficient to support his conviction for depraved indifference murder "as that offense was defined on the date Mr. Sanchez's state conviction became final." (Sanchez Pet. ¶ 12 at p. 7-13; Dkt. No. 3: Sanchez Br. at 29-68.) The First Department, however, rejected Sanchez's sufficiency of the evidence claim:

> [Sanchez's] sufficiency claim regarding his conviction for depraved indifference murder was not preserved for appellate review. Although, in response to [Sanchez's] generalized dismissal motion, the court briefly summarized some of the evidence, it never "expressly decided" the particular issue raised on appeal, and we decline to review it in the interest of justice. Were we to review this claim, we would find the verdict was based on legally sufficient evidence, based on the court's charge as given without exception. We also find that the verdict was not against the weight of the evidence in light of the elements of the crime as charged to the jury without objection.

People v. Sanchez, 40 A.D.3d 468, 468-69, 836 N.Y.S.2d 174, 175 (1st Dep't) (citations omitted), appeal denied, 9 N.Y.3d 881, 842 N.Y.S.2d 793 (2007); see page 16 above.

### A.      The Adequate & Independent State Ground Doctrine

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[24]

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state . . . that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724).  The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044

---

[24]      See also, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127 (2011); Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

n.10 ("[A] state court need not fear reaching the merits of a federal claim in an <u>alternative</u> holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[25/]   Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas."  <u>Harris</u> v. <u>Reed</u>, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

> State courts are not required to use any particular language:

>> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

<u>Coleman</u> v. <u>Thompson</u>, 501 U.S. at 739, 111 S. Ct. at 2559.

> Unlike the situation where the state court holds that claims were either unpreserved <u>or</u> without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review, <u>e.g.</u>, <u>Galarza</u> v. <u>Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001), the First Department explicitly found Sanchez's claim unpreserved; the fact that the First Department also stated the conclusion it would reach on the merits if it were to review the claim does not change the result.  <u>See, e.g.</u>, <u>Green</u>

---

[25/]   <u>See, e.g.</u>, <u>Garcia</u> v. <u>Lewis</u>, 188 F.3d at 77-82; <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d at 724-25; <u>see also</u>, <u>e.g.</u>, <u>Santiago</u> v. <u>People</u>, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

v. Travis,  414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."); Glenn v. Bartlett, 98 F.3d at 724-25 & n.3 (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"); Velasquez v. Leonardo, 898 F.2d at 9 (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds).  Thus, the First Department's decision as to Sanchez's claim regarding sufficiency of the evidence unambiguously rested on a state procedural ground.

   The Supreme Court has established that "the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts."  Simpson v. Portuondo, 01 Civ. 8744, 2002 WL 31045862 at *4 (S.D.N.Y. June 4, 2002) (citing James v. Kentucky, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984)); accord, e.g., Walker v. Martin, 131 S. Ct. at 1128 ("To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'"); see, e.g., Lee v. Kemna  534 U.S. 362, 376, 122 S. Ct. 877, 885 (2002) ("[V]iolation of 'firmly established and regularly followed' state rules . . . [are] adequate to foreclose review of a federal claim").[26]

---

[26]  See also, e.g., Clark v. Perez, 510 F.3d 382, 391 (2d Cir.) ("To determine whether a state
(continued...)

Even if a state rule is discretionary, it can serve as an adequate and independent state ground, as the Supreme Court has made clear:

> We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review.  Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine.  To the contrary, a discretionary rule can be "firmly established" and "regularly followed" – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.

Beard v. Kindler, 130 S. Ct. 612, 618 (2009); accord, e.g., Walker v. Martin, 131 S. Ct. at 1125 (In Beard, the Supreme "Court clarified that a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default.").

New York's contemporaneous objection rule, codified in Criminal Procedure Law § 470.05(2), provides that issues "not raised at trial may not be considered for the first time on appeal."  People v. Thomas, 50 N.Y.2d 467, 471, 429 N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[27/]  Moreover, a party must make a specific protest at the time of a claimed error to

---

26/    (...continued)
procedural bar is 'adequate to support the judgment,' a federal habeas court should look to whether 'the state rule at issue . . . is firmly established and regularly followed.'" (citations omitted)), cert. denied, 129 S. Ct. 130 (2008); Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (To be "adequate," the state procedural requirement must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case."), cert. denied, 552 U.S. 1150, 128 S. Ct. 1083 (2008); Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) ("'State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.'"); Nunez v. Conway, 07 Civ. 7560, 2010 WL 234826 at* 9 (S.D.N.Y. Jan. 20, 2010); Roldan v. Ercole, 08 Civ. 6548, 2009 WL 2191176 at *3 (S.D.N.Y. July 20, 2009).

27/    C.P.L. § 470.05(2) provides, in relevant part:

(continued...)

preserve an issue for appellate review.  E.g., People v. Hardy, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d

513, 517 n.3 (2005).  Hence, if a party neglects to raise a claim in the trial court, or fails to specify

the grounds for an objection (either because the objection is general, or because it specifies a

different ground than that raised on appeal), state appellate courts generally will not consider that

claim.  E.g., People v. Cona, 49 N.Y.2d 26, 33, 424 N.Y.S.2d 146, 148 (1979); see also, e.g.,  Olivo

v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *10 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.) ("Under

New York law, a party's failure to specify the grounds for its general objection also renders its

argument unpreserved for appellate review." (citing N.Y. cases)), report & rec. adopted, 2006 WL

2689889 (S.D.N.Y. Sept. 19, 2006) (Castel, D.J.).

### B.     Counsel's Generalized Motion to Dismiss Did Not Preserve Sanchez's Sufficiency of the Evidence Claim

To properly preserve a challenge to the legal sufficiency of a conviction, "a defendant

must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error

---

27/      (...continued)
           For the purposes of appeal, a question of law with respect to a ruling or instruction
           of a criminal court during a trial or proceeding is presented when a protest thereto
           was registered, by the party claiming error, at the time of such ruling or instruction
           or at any subsequent time when the court had an opportunity of effectively changing
           the same.  Such protest need not be in the form of an "exception" but is sufficient if
           the party made his position with respect to the ruling or instruction known to the
           court, or if in response to a protest by a party, the court expressly decided the
           question raised on appeal.  In addition, a party who without success has either
           expressly or impliedly sought or requested a particular ruling or instruction, is
           deemed to have thereby protested the court's ultimate disposition of the matter or
           failure to rule or instruct accordingly sufficiently to raise a question of law with
           respect to such disposition or failure regardless of whether any actual protest thereto
           was registered.

being urged." People v. Hawkins, 11 N.Y.3d 484, 492, 872 N.Y.S.2d 395, 399 (2008).  General motions to dismiss that do not set forth the specific grounds for the alleged insufficiency of the evidence fail to preserve the issue.  E.g., People v. Hawkins, 11 N.Y.3d at 492, 872 N.Y.S.2d at 399 ("[G]eneral motions simply do not create questions of law for this Court's review."); People v. Gray, 86 N.Y.2d 10, 20, 629 N.Y.S.2d 173, 176 (1995) ("The chief purpose of demanding notice through objection or motion in a trial court, as with any specific objection, is to bring the claim to the trial court's attention. A general motion fails at this task.  As a practical matter, a general motion to dismiss is often no more helpful to the Trial Judge than would be a motion predicated on an erroneous ground." (citations omitted)).

        Sanchez did not preserve his sufficiency of the evidence claim.  After a detailed motion to dismiss the intentional murder count, Sanchez's trial counsel stated in conclusory fashion that she "would ask for a trial order of dismissal of the intentional murder count of this indictment and the whole case as well."  (See page 9 above.)  Sanchez's counsel, however, failed to provide any specific arguments about the insufficiency of the evidence relating to the depraved indifference murder count.  Justice Marcus even noted the general nature of Sanchez's counsel's motion stating: "I don't hear [Sanchez's counsel] challenging other than in the most general way the depraved count" and "With respect to the depraved count, . . . I don't hear [Sanchez's counsel] Ms. Stewart challenging directly at any rate the legal[] sufficiency of that count."  (Tr. 562-63, quoted in full at page 10 above.)

        New York case law makes clear that such a boilerplate motion, without explanation, is not sufficient to preserve a challenge to the sufficiency of the evidence.  See, e.g., People v.

Carncross, 14 N.Y.3d 319, 324-25, 901 N.Y.S.2d 112, 114 (2010) ("[W]here a motion to dismiss for insufficient evidence [is] made, the preservation requirement compels that the argument be specifically directed at the alleged error.") (quotations omitted); People v. Hawkins, 11 N.Y.3d at 493, 872 N.Y.S.2d at 400 (Trial counsel's motion for dismissal on the grounds that the state "failed to prove that [defendant] acted with Depraved Indifference Murder" was not specific enough to preserve the legal insufficiency issue for review because it "did little more than argue that the People failed to prove the essential elements of depraved indifference murder.  The objection could have been directed at either the reckless mens rea element, or the objective circumstances . . . ."); People v. Lewis, 72 A.D.3d 705, 706, 898 N.Y.S.2d 232, 233 (2d Dep't) (Legal insufficiency claim was not preserved where "defense counsel merely made a general motion for a trial order of dismissal of that charge based upon the People's alleged failure to make out a prima facie case."), appeal denied, 15 N.Y.3d 752, 906 N.Y.S.2d 825 (2010); People v. Hill, 72 A.D.3d 702, 705, 898 N.Y.S.2d 553, 557 (2d Dep't) (Legal insufficiency claim was unpreserved because "defense counsel merely made a general motion for a trial order of dismissal based upon the People's alleged failure to make out a prima facie case, and did not raise a specific challenge to the sufficiency of the evidence with respect to that charge."), appeal denied, 15 N.Y.3d 751, 906 N.Y.S.2d 824 (2010); People v. Mora,  57 A.D.3d 571, 573, 868 N.Y.S.2d 722, 724 (2d Dep't 2008) ("The defendant's generalized motion to dismiss made at the conclusion of the People's case was insufficient to preserve her challenge to the legal sufficiency of the evidence" of depraved indifference murder.), appeal denied, 12 N.Y.3d 785, 879 N.Y.S.2d 62 (2009); People v. Wells, 53 A.D.3d 181, 188-89, 862 N.Y.S.2d 20, 25 (1st Dep't) (Defendant's objection "did not suffice to apprise the trial court of

the contention . . . advanced [on appeal] that depraved indifference must be evaluated <u>subjectively</u>

from [defendant's] mental state and not <u>objectively</u> from the surrounding circumstances" where

"Defendant never objected that the trial court was required to find that he acted with a mental state

beyond recklessness or that depraved indifference referred to anything other than the circumstances

under which the risk-creating conduct took place."), <u>appeal denied</u>, 11 N.Y.3d 858, 872 N.Y.S.2d

81 (2008); <u>People v. Zephirin</u>, 47 A.D.3d 649, 649, 849 N.Y.S.2d 438, 438 (2d Dep't 2008)

(challenge to the sufficiency of the depraved indifference element was unpreserved where defendant

"never argued, or requested that the Supreme Court instruct the jury, that depraved indifference was

a culpable mental state."); <u>People</u> v. <u>Bowman</u>, 48 A.D.3d 178, 182-83, 847 N.Y.S.2d 536, 540 (1st

Dep't 2007) (Defendant's claim that "the evidence fail[ed] to establish the required culpable mental

state" was unpreserved for appellate review because he "neither raised that contention in moving to

dismiss nor voiced any objection to the court's charge to the jury on the elements of the crime."),

<u>appeal denied</u>, 10 N.Y.3d 808, 857 N.Y.S.2d 42 (2008).[28]

---

[28]    <u>See also</u>, <u>e.g.</u>, <u>People</u> v. <u>Danielson</u>, 40 A.D.3d 174, 176, 832 N.Y.S.2d 546, 548 (1st Dep't)
("[D]efendant's legal sufficiency claim is unpreserved . . . [because] [t]here was no mention
of the argument he now raises on appeal, namely, that the trial evidence supported only a
theory of intentional murder, not a reckless one committed under circumstances evincing a
depraved indifference to human life.  Because defendant's dismissal motion was not
specifically directed at the alleged insufficiency that he now raises on appeal, the claim is
unpreserved as a matter of law, and we decline to review it in the interests of justice."
(citations omitted)), <u>aff'd</u>, 9 N.Y.3d 342, 849 N.Y.S.2d 480 (2007); <u>People</u> v. <u>Craft</u>, 36
A.D.3d 1145, 1146, 827 N.Y.S.2d 376, 377 (3d Dep't) (Legal sufficiency issue had "'not
been properly preserved for judicial review because [defendant] failed to seek dismissal at
the conclusion of the People's case or at the end of the trial by making a detailed, specific
motion addressed to the claimed deficiencies in the evidence.'"), <u>appeal denied</u>, 8 N.Y.3d
945, 836 N.Y.S.2d 555 (2007); <u>People</u> v. <u>Hall</u>, 32 A.D.3d 864, 864, 820 N.Y.S.2d 526, 526
(continued...)

Indeed, Sanchez concedes that his trial counsel's statement at the close of the case did not preserve his claim.  (See Dkt. No. 13: Sanchez Traverse at 7 ("Sanchez does not argue that his legal sufficiency claim was preserved by a specific objection; he argues that, notwithstanding the absence of a specific objection, his claim was preserved by the trial court's decision."); see also Dkt. No. 3: Sanchez Br. at 37, 40.)

It is well settled that failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent bar to federal habeas review.  See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); Brown v. Ercole, 353 F. App'x 518, 520 (2d Cir. 2009) ("[A]pplication of New York's contemporaneous objection rule may bar federal habeas review."); Garvey v. Duncan  485 F.3d 709, 720 (2d Cir. 2007) (Petitioner's

---

28/      (...continued)
(2d Dep't) ("The defendant's claim that the evidence was insufficient to establish his guilt of depraved indifference murder was not preserved for appellate review as the defendant's motion to dismiss was not 'specifically directed' to the depraved indifference charge." (citations omitted)), appeal denied, 7 N.Y.3d 902, 826 N.Y.S.2d 611 (2006); People v. Flores, 23 A.D.3d 194, 195, 803 N.Y.S.2d 85, 86 (1st Dep't 2005) (legal sufficiency issue not preserved where, "[i]n his motion for a trial order of dismissal, defense counsel stated: 'I ask for a trial order of dismissal, that the People have not proved that defendant acted under circumstances evincing a depraved indifference to human life.'  Thus, defendant did not alert the court to the instant argument, that his conduct was intentional, not reckless." (citations omitted)), appeal denied, 6 N.Y.3d 775, 811 N.Y.S.2d 343 (2006); People v. Morrison, 17 A.D.3d 272, 272, 795 N.Y.S.2d 2, 3 (1st Dep't) ("Neither defendant's generalized motion to dismiss, nor his motion to set aside the verdict preserved his argument that his conduct clearly constituted intentional murder and thus failed to support his conviction of depraved indifference assault . . . ." (citations omitted)), appeal denied, 5 N.Y.3d 808, 803 N.Y.S.2d 37 (2005).

claim "was not raised either by specific objection or by the trial court's decision.   As a consequence, . . .  [w]e need not reach or decide the defendant's federal claims, since there was an independent and adequate state law ground for the state appellate court's decision to affirm the defendant's conviction."); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case law, application of the state's preservation rule is adequate – i.e., firmly established and regularly followed."); Franco v. Walsh, 73 F. App'x 517, 518 (2d Cir. 2003) (Petitioner's claim of an erroneous jury charge was procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules" (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991))).[29]

---

[29]   See also, e.g., Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (failure to object constituted adequate and independent state ground), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1992); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground); Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *11-12 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Jamison v. Smith, No. 94 CV 3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to object
(continued...)

Sanchez concedes as much.  (Sanchez Traverse at 7 ("Respondent accurately reports that New York's contemporaneous objection rule 'may constitute an adequate and independent state procedural bar.'  Mr. Sanchez has acknowledged as much." (citations omitted)).)

More specifically, district court decisions within the Circuit have upheld as an adequate and independent state ground New York's rule that general motions to dismiss that do not set forth the specific grounds for the alleged insufficiency of the evidence fail to preserve the issue. See, e.g., Wells v. Perez, 10 Civ. 1107, Dkt. No. 14, slip op. at 26 (S.D.N.Y. Dec. 8, 2010) (Petitioner's sufficiency claim was unpreserved where defense counsel "did not make the specific argument now advanced by the petitioner:  that the evidence was insufficient because it failed to support a finding of depraved indifference under Feingold's revised definition of the term, which requires the trier of fact to treat depraved indifference as a culpable mental state and evaluate it from the defendant's subjective perspective."); Lisojo v. Rock, 09 Civ. 7928, 2010 WL 1223086 at *23-24 (S.D.N.Y. Mar. 31, 2010) (Peck, M.J.) (Counsel's general motion to dismiss did not preserve petitioner's insufficiency claim since "counsel never mentioned the specific argument raised on appeal, namely, that the State failed to establish beyond a reasonable doubt that at the time of the incident [petitioner] harbored the mental state of depraved indifference, a key element of the crime, nor did counsel object to the elements of the offense as they were charged to the jury." (quotation omitted)), report & rec. adopted, 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010); Farino v. Ercole, No.

---

29/     (...continued)
contemporaneously . . . constitutes an adequate and independent basis for barring habeas review.").

07 CV 3592, 2009 WL 3232693 at *7, *9 (E.D.N.Y. Sept. 30, 2009) (Trial counsel's motion for dismissal of depraved indifference murder charge on the grounds that the evidence "was insufficient . . . to sustain the charges in the indictment" did not preserve a legal sufficiency issue because "counsel's objection was not specifically directed to the sufficiency of the evidence with respect to depraved indifference murder."); Flores v. Rivera, 06 Civ. 13517, 2009 WL 1110578 at *1, *7 (S.D.N.Y. Apr. 23, 2009) (Trial counsel's motion to dismiss depraved indifference murder charge on the grounds that "'the People have not proved that the defendant acted under circumstances evincing a depraved indifference to human life'" did not preserve legal sufficiency issue because it "'did not alert the [trial] court to the [argument on appeal] that his conduct was intentional, not reckless.'"); Fore v. Ercole, 594 F. Supp. 2d 281, 289 (E.D.N.Y. 2009) (Motion for dismissal "on the ground that the People had not made out a prima facie case with respect to the counts in the indictment" did not preserve a legal sufficiency issue because a "a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged."); Brito v. Phillips, 485 F. Supp. 2d 357, 363 (S.D.N.Y. 2007) ("New York courts have consistently held that a general motion to dismiss does not preserve a challenge to the legal sufficiency of the evidence of depraved indifference." (citing N.Y. cases)).[30/]

---

[30/]   See also, e.g., Weathers v. Conway, No. 05-CV-139, 2007 WL 2344858 at *8 (W.D.N.Y. Aug. 15, 2007) ("Under case law applying New York's contemporaneous objection rule," a generalized motion to dismiss on grounds that the prosecution "haven't met their burden" is "not sufficient to preserve a specific objection to the legal sufficiency of evidence of a robbery."); Brown v. People, No. 04-CV-1087, 2006 WL 3085704 at *3 (E.D.N.Y. Oct. 30, (continued...)

**C.     Justice Marcus' Ruling on Sanchez's Motion to Dismiss did not Expressly Decide Sanchez's Current Insufficiency Claim**

Sanchez claims that "[w]hile defense counsel failed to make a specific motion to dismiss the depraved indifference murder count, [Justice Marcus'] decision denying [Sanchez's counsel] Ms. Stewart's general motion 'expressly decided' – and therefore preserved – the claim that the evidence was insufficient to establish depraved indifference murder." (Dkt. No. 3: Sanchez Br. at 37; see id. at 37-44; Dkt. No. 13: Sanchez Traverse at 7-11.)

After ruling on Sanchez's counsel's motion to dismiss the intentional murder count, Justice Marcus briefly addressed the sufficiency of the evidence relating to the depraved indifference murder count, as follows:

> With respect to the depraved count, as I say, I don't hear [Sanchez's counsel] Ms. Stewart challenging directly at any rate the legal[] sufficiency of that count but given [Sanchez's] testimony, it's clear that there is a reasonable view of the evidence to support a non-intentional reckless count and given, again, the location of the

---

30/     (...continued)
2006) (general motion to dismiss that "did not specifically mention the sufficiency of the evidence regarding forcible compulsion . . . was 'unpreserved for appellate review.'"  Such a procedural default  "constitutes an independent and adequate state ground."); Pretlow v. Lord, No. 03 CV 2547, 2005 WL 1073609 at *2 (E.D.N.Y. Apr. 29, 2005) ("New York courts have required that a motion to dismiss for insufficient evidence be specifically directed at the alleged error.  At the conclusion of the People's case against [petitioner], Defense Counsel moved to dismiss all of the charges on the general grounds that the People had failed to establish each and every element of the charges. . . . [T]his Court finds that the Appellate Division's finding of procedural default is an independent and adequate state ground for barring this claim in federal court." (citations & quotations omitted)); Ibarra v. Burge, 02 Civ. 0825, 2002 WL 1467756 at *3 (S.D.N.Y. July 9, 2002) (Peck, M.J.) ("It is black letter law in New York that a defendant's trial motion to dismiss for insufficiency of the evidence must be 'specifically directed' at the alleged error to be preserved for appellate review."  State court's denial of claim thus rests on adequate and independent state law grounds.).

wound and the knife that caused it and the depth of the wound, there is certainly legally sufficient evidence to support not only a finding of recklessness but also circumstances evincing a depraved indifference to human life.  So the motion to dismiss each one of the counts is denied.

(See page 10 above.)

Sanchez notes that C.P.L. § 470.05(2) provides that an issue may be preserved for appellate purposes where, "'in response to a protest by a party, the court expressly decided the question raised on appeal.'"  (Sanchez Br. at 39, quoting C.P.L. § 470.05(2).)  Sanchez argues that since the "thrust" of his insufficiency claim is that "the evidence at his trial did not establish that Mr. Sanchez acted with a mental state of 'depraved indifference to human life'" (Sanchez Traverse at 9, 17), Justice Marcus' ruling that the evidence established a mental state of recklessness was adequate to preserve this sufficiency claim (Sanchez Br. at 40-41; Sanchez Traverse at 7-11).

This Court disagrees.  As the Second Circuit has noted, "New York courts take seriously § 470.05(2)'s requirement that an issue must be expressly decided by the trial court (if not raised by a party) for it to be preserved for appeal."  Garvey v. Duncan, 485 F.3d 709, 717 (2d Cir. 2007) (citing N.Y. cases).  Moreover, "statements made by the trial court that might imply that it was considering an issue not raised by the parties should be read in context rather than in a vacuum."  Garvey v. Duncan, 485 F.3d at 717 (citing People v. Turriago, 90 N.Y.2d 77, 659 N.Y.S.2d 183 (1997)).

Justice Marcus' decision must be read in context of Sanchez's counsel's failure to even mention the depraved indifference count, much less attack the sufficiency of the evidence of any of the elements of depraved indifference murder.  (See page 9 above.)  In response to this bald motion,

Justice Marcus gave a cursory review of the trial testimony and addressed the sufficiency of the evidence relating to the elements of the crime as it then existed.  Since nothing in Sanchez's counsel's motion even hinted to the present claim that the evidence failed to establish a depraved indifference mens rea, Justice Marcus' ruling did not expressly decide (nor address in any way) whether that mens rea was required or established by the evidence.  Rather, he briefly looked at the evidence in light of the state of New York depraved indifference law at that time.

By contrast, in People v. Feingold, 7 N.Y.3d 288, 290, 819 N.Y.S.2d 691, 692-93 (2006), the New York Court of Appeals found that Feingold's sufficiency claim was preserved where the trial judge, in a bench trial, expressly decided that defendant did not possess a depraved indifference mental state to support a first degree reckless endangerment charge.  In an apparent suicide attempt, Feingold sealed his apartment door with tape and "blew out the pilot lights of his stove, turned on the gas, took tranquilizers and fell asleep in front of the oven, expecting the gas to kill him."  People v. Feingold, 7 N.Y.3d at 290, 819 N.Y.S.2d at 692.  When a spark from the refrigerator compressor ignited the gas several hours later, the subsequent explosion "wrecked the walls of his apartment and heavily damaged a number of neighboring apartments."  People v. Feingold, 7 N.Y.3d at 290, 819 N.Y.S.2d at 692.  Despite finding that "defendant's state of mind was not one of depraved indifference," the trial judge, relying on Register,[31] found Feingold guilty of

---

[31]    Under Register, the only mental state required for depraved indifference murder was recklessness, not depraved indifference.  People v. Register, 60 N.Y.2d 270, 276, 469 N.Y.S.2d 599, 601 (1983) ("[T]he statutory definition of depraved mind murder includes both a mental element ('recklessly') and a voluntary act ('engaging in conduct which creates a grave risk of death to another person')."), overruled by People v. Feingold, 7 N.Y.3d at
                                                                                            (continued...)

first degree reckless endangerment.  People v. Feingold, 7 N.Y.3d at 290, 819 N.Y.S.2d at 692.[32]

On appeal, the State argued that Feingold's "argument that depraved indifference is a mens rea is unpreserved because he did not plainly present it to the trial court."  People v. Feingold, 7 N.Y.3d at 290, 819 N.Y.S.2d at 692-93.  The Court of Appeals rejected this argument, ruling that the claim was preserved because the decision of the trial judge (as a fact-finder) "demonstrate[d] that he specifically confronted and resolved this issue." People v. Feingold, 7 N.Y.3d at 290, 819 N.Y.S.2d at 693.

In contrast, Justice Marcus' decision simply applied the evidence to the legal requirements as they existed at the time of Sanchez's trial, and he did not expressly confront or resolve Sanchez's current claim that the evidence failed to establish a depraved indifference mens rea.[33]

This conclusion is buttressed by the fact that, even if Sanchez's counsel's motion to dismiss had mirrored the language of Justice Marcus' decision (i.e., argued that the location and depth of the wound and the size of the knife that caused it were insufficient to support a finding of

---

[31]    (...continued)
       294, 819 N.Y.S.2d at 695.

[32]    The Court of Appeals noted that both first degree reckless endangerment and depraved indifference murder contain identical language requiring that the defendant, "'[u]nder circumstances evincing a depraved indifference to human life, . . . recklessly engages in conduct which creates a grave risk of death to another person.'"  People v. Feingold, 7 N.Y.3d at 290 & n.1, 819 N.Y.S.2d at 692 & n.1 (quoting C.P.L. §§ 120.25 & 125.25(2)).

[33]    It is worth reiterating that the First Department found Sanchez's claim unpreserved, noting that while Justice Marcus "briefly summarized some of the evidence, [he] never 'expressly decided' the particular issue raised on appeal."  (See page 16 above.)

recklessness or circumstances evincing a depraved indifference to human life), Sanchez's counsel

still would not have preserved Sanchez's claim regarding the lack of a culpable depraved

indifference mental state. Given the particularity required to preserve a claim under New York law

(see cases cited on pages 34-36 above), Sanchez's counsel was required to specifically argue that

the trial evidence was insufficient to establish a depraved indifference mental state even though

Sanchez's case was tried pre-Feingold when, under Register, recklessness was the only mental state

required for depraved indifference. See, e.g., Wells v. Perez, 10 Civ. 1107, Dkt. No. 14, slip op. at

26 (S.D.N.Y. Dec. 8, 2010) (Petitioner's sufficiency claim was unpreserved where trial counsel, pre-

Feingold, "did not make the specific argument now advanced by the petitioner:  that the evidence

was insufficient because it failed to support a finding of depraved indifference under Feingold's

revised definition of the term, which requires the trier of fact to treat depraved indifference as a

culpable mental state and evaluate it from the defendant's subjective perspective."); Lisojo v. Rock,

09 Civ. 7928, 2010 WL 1223086 at *23-24 (S.D.N.Y. Mar. 31, 2010) (Peck, M.J) (In a case tried

pre-Feingold, counsel's general motion to dismiss did not preserve petitioner's insufficiency claim

since "counsel never mentioned the specific argument raised on appeal, namely, that the State failed

to establish beyond a reasonable doubt that at the time of the incident [petitioner] harbored the

mental state of depraved indifference, a key element of the crime, nor did counsel object to the

elements of the offense as they were charged to the jury." (quotation omitted)), report & rec.

adopted, 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010); People v. Wells, 53 A.D.3d 181, 188-189,

862 N.Y.S.2d 20, 25 (1st Dep't) (insufficiency claim unpreserved where defense counsel, pre-

Feingold, "never objected that the trial court was required to find that he acted with a mental state

beyond recklessness or that depraved indifference referred to anything other than the circumstances under which the risk-creating conduct took place. . . . Thus, the court's evaluation of the sufficiency of proof according to the Register standard, which represented the prevailing law at the time defendant was convicted, went unchallenged, and its failure to apply a mes rea standard, as now urged, is unpreserved for review." (citations omitted)), appeal denied, 11 N.Y.3d 858, 872 N.Y.S.2d 81 (2008); People v. Zephirin, 47 A.D.3d 649, 649, 849 N.Y.S.2d 438, 438 (2d Dep't 2008) (challenge to the sufficiency of the depraved indifference element was unpreserved where defendant, pre-Feingold, "never argued, or requested that the Supreme Court instruct the jury, that depraved indifference was a culpable mental state."); People v. Bowman, 48 A.D.3d 178, 182-183, 847 N.Y.S.2d 536, 540 (1st Dep't 2007) (In a case tried pre-Feingold, defendant's "contention that the People were required to prove that defendant acted with a subjective mental state of depraved indifference is not preserved because the defendant neither raised that contention in moving to dismiss nor voiced any objection to the court's charge to the jury on the elements of the crime."), appeal denied, 10 N.Y.3d 808, 857 N.Y.S.2d 42 (2008).[34/]

Accordingly, since Justice Marcus' statements, if they had been made by Sanchez's counsel, would not have been specific enough to preserve Sanchez's sufficiency claim, they were not specific enough to "expressly decide" the issue either. Consequently, this Court finds, as did the

---

[34/]   Compare, e.g., People v. Jean-Baptiste, 11 N.Y.3d 539, 544, 872 N.Y.S.2d 701, 705 (2008) (Distinguishing cases where the defendant "advanced a different legal theory in [the appellate court] than the one objected to at trial," and finding insufficiency claim preserved where defense counsel "made a specific motion to dismiss for legal insufficiency at trial, anticipating the change in the law brought by Feingold.").

First Department (see pages 16, 28 above), that Sanchez's sufficiency claim is unpreserved.  Because the First Department's denial of Sanchez's insufficient evidence claim rests on an adequate and independent state procedural bar, Sanchez's habeas claim regarding the sufficiency of the evidence should be <u>DENIED</u> as procedurally barred, unless "saved" by Sanchez's other arguments, which we now address.

### D.  <u>Application of the Procedural Bar Was Not "Exorbitant"</u>

Sanchez argues that even if the procedural bar in this case was "'firmly established and regularly followed,'" its application was "'exorbitant'" and therefore "'inadequate to foreclose federal review.'"  (Dkt. No 3: Sanchez Br. at 44-48; Dkt. No. 13: Sanchez Traverse at 11-14.)

"Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim.  There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."  <u>Lee</u> v. <u>Kemna</u>, 534 U.S. 362, 376, 122 S. Ct. 877, 885 (2002) (citations omitted).  The Supreme Court noted three factors to consider in determining whether a "case falls within the small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim."  <u>Lee</u> v. <u>Kemna</u>, 534 U.S. at 381, 122 S. Ct. at 888.  As summarized by the Second Circuit, the three factors are:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003).[35/]  While not a test to determine the adequacy of a state procedural bar, these factors should be used "as guideposts in 'evaluat[ing] the state interest in a procedural rule against the circumstances of a particular case.'"  Cotto v. Herbert, 331 F.3d at 240 (quoting Lee v. Kemna, 534 U.S. at 381-85, 122 S. Ct. at 888-90).[36/]

As to the first factor, the Second Circuit has noted that, where the procedural bar is the failure to make a contemporaneous objection, "the first guidepost 'is less applicable . . . because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court.'"  Donaldson v. Ercole, 2009 WL 82716 at *2 (quoting Cotto v. Herbert, 331 F.3d at 242); accord, e.g., Clark v. Perez, 510 F.3d at 391 n.4 ("The first guidepost has no bearing here because the failure altogether to raise an issue cannot be 'actually relied on' because no court has been notified that the issue even exists.").  Moreover, a reviewing court "cannot know whether perfect compliance with the contemporaneous objection rule would have changed the trial court's ruling because the trial court did not have a chance to make any determination about sufficiency." Donaldson v. Ercole, 2009 WL 82716 at *2.  In the present case, even if Sanchez's counsel had properly raised the sufficiency claim based on the lack of depraved indifference mens rea, it would not have affected Justice Marcus' decision because, at the time of Sanchez's trial, Register required only a reckless mental state.

---

[35/]   Accord, e.g., Donaldson v. Ercole, No. 06-5781, 2009 WL 82716 at *1-2 (2d Cir. Jan. 14, 2009); Clark v. Perez, 510 F.3d 382, 391 (2d Cir.), cert. denied, 129 S. Ct. 130 (2008); Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007).

[36/]   Accord, e.g., Donaldson v. Ercole, 2009 WL 82716 at *1; Clark v. Perez, 510 F.3d at 391; Garvey v. Duncan, 485 F.3d at 714.

Considering the second factor, "there can be no doubt that New York case law requires that a sufficiency objection be specifically made to the trial court in the form of a motion to dismiss at trial." Donaldson v. Ercole, 2009 WL 82716 at *2; see also, e.g., People v. Hines, 97 N.Y.2d 56, 62, 736 N.Y.S.2d 643, 647 (2001) (The New York Court of Appeals has "repeatedly held that an indictment may be dismissed due to insufficient evidence only where the sufficiency issues pursued on appeal were preserved by a motion to dismiss at trial.  Indeed, even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be specifically directed at the alleged error." (citations & quotations omitted)); People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995) ("[E]ven where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error.").  Given this requirement that a motion to dismiss be specifically directed at the alleged error, Sanchez's counsel was required to argue, even pre-Feingold, that the trial evidence was insufficient to establish a depraved indifference mental state in order to preserve this claim.  See cases cited on pages 45-46 above.  This factor thus weighs against Sanchez.[37]

---

[37]     Sanchez notes that "while state caselaw generally demands a specific and contemporaneous objection, the Appellate Division may consider even an unpreserved claim of legal insufficiency through the exercise of its interest-of-justice jurisdiction." (Sanchez Br. at 46.) After citing several cases where the Appellate Division reached unpreserved insufficiency claims and reversed depraved indifference murder convictions in the interest of justice, Sanchez argues that "the fact that [state] courts have reached the merits of the same claim Mr. Sanchez raised on appeal tends to support his argument that application of the procedural bar was exorbitant." (Sanchez Br. at 46-47; see Sanchez Traverse at 13.)

This Court disagrees.  In applying the second factor in Lee, the Supreme Court found that the use of the state procedural rule was exorbitant because the state court had never
(continued...)

The third factor is the "most important" consideration. <u>Lee</u> v. <u>Kemna</u>, 534 U.S. at 382, 122 S. Ct. at 889; <u>accord</u>, <u>e.g.</u>, <u>Garvey</u> v. <u>Duncan</u>, 485 F.3d at 719. Sanchez's counsel's general motion to dismiss failed to "substantially comply" (indeed, failed to comply at all) with New York's preservation rule. <u>See</u>, <u>e.g.</u>, <u>Donaldson</u> v. <u>Ercole</u>, 2009 WL 82716 at *3 ("There can be no substantial compliance with a contemporaneous objection rule when no sufficiency objection was even implied in the trial court.").

Furthermore, "demanding compliance with § 470.05(2) serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." <u>Garvey</u> v. <u>Duncan</u>, 485 F.3d at 720.[38] Had Sanchez's counsel properly raised the present insufficiency claim, Justice Marcus, although bound by <u>Register</u>, could have addressed counsel's claim and determined whether

---

[37]     (...continued)
applied the procedural bar in the "unique circumstances" presented in that case, namely "the sudden, unanticipated, and at the time unexplained disappearance of critical, subpoenaed witnesses on what became the trial's last day." <u>Lee</u> v. <u>Kemna</u>, 534 U.S. at 382, 122 S. Ct. at 888. In contrast, New York courts routinely have applied the lack of preservation as a procedural bar to review where a defendant has failed to specifically address the claim in a motion to dismiss, including cases involving depraved indifference murder. (<u>See</u> cases cited on pages 34-36 above.) Thus, "this case presents no unique set of circumstances similar to the circumstances in <u>Lee</u>. There was no sudden or unanticipated event that led [petitioner] not to comply with § 470.05(2)." <u>Garvey</u> v. <u>Duncan</u>, 485 F.3d at 719. Sanchez concedes as much. (Sanchez Br. at 46; Sanchez Traverse at 13.) The mere fact that New York courts sometimes may address an unpreserved depraved indifference sufficiency claim in the interest of justice does not render the application of the procedural bar "exorbitant" as that term was used in <u>Lee</u>. <u>See</u> <u>Walker</u> v. <u>Martin</u>, 131 S. Ct. 1120, 1125 (2011), & <u>Beard</u> v. <u>Kindler</u>, 130 S. Ct. 612, 618 (2009), both quoted on page 32 above.

[38]     <u>Accord</u>, <u>e.g.</u>, <u>Wynder</u> v. <u>Smith</u>, 09 Civ. 4541, 2011 WL 70556 at *9 (S.D.N.Y. Jan. 10, 2011); <u>Devison</u> v. <u>Cunningham</u>, 09 Civ. 1031, 2010 WL 5060728 at *5 (S.D.N.Y. Dec. 8, 2010).

the trial evidence established a depraved indifference mens rea.[39]   In addition, as Sanchez has

conceded, had counsel objected, Justice Marcus "might have modified the charge given to the jury"

and "objection would have allowed the Appellate Division to conduct a plenary review of the weight

of the evidence."  (Dkt. No. 2: Sanchez Pet. Ex. D-1: Herbert § 440 Aff. ¶ 24.)

       Moreover, "[e]ven a state court that has previously rejected a constitutional argument

may decide, upon reflection, that the contention is valid." Engle v. Isaac, 456 U.S. 107, 130, 102

S. Ct. 1558, 1573 (1982).  Sanchez's counsel's failure to raise this claim precluded review at the trial

and at the state appellate level.  Consequently, the third factor weighs against Sanchez.

       For all these reasons, applying the Kemna/Cotto factors, this Court finds that the

application of the state procedural bar for lack of preservation was not exorbitant.

**E.     The Grounds for Sanchez's Insufficiency Claim were Reasonably Available to Counsel at Trial**

       To avoid a procedural default on his unpreserved insufficiency claim, Sanchez would

have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure

to consider the federal claims will result in a 'fundamental miscarriage of justice,'" i.e., a showing

---

[39]     It is significant that after the verdict but before sentencing, Sanchez's counsel brought a
C.P.L. § 330.30 motion to set aside the verdict, claiming that the evidence of depraved
indifference murder was insufficient.  (See pages 13-14 above.) The basis for the motion,
however, was different than Sanchez's habeas claim; rather, Sanchez's counsel argued that
Sanchez's intent was "to do grievous harm" and thus "[i]f it was intentional then it was NOT
depraved indifference."  (See page 13 above.)  Having obtained a jury verdict of not guilty
on intentional murder, Sanchez's counsel felt free to argue that Sanchez's conduct was
intentional and not depraved indifference.  This strikes the Court as gamesmanship (albeit
an example of effective assistance at trial).  Indeed, Sanchez's current counsel calls this
argument an "'unseemly assertion.'"  (Sanchez Traverse at 18.)

of "actual innocence." <u>Harris</u> v. <u>Reed</u>, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>Schlup</u> v. <u>Delo</u>, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995); <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991).[40/]

Sanchez asserts that there is cause for his procedural default because, at the time of his trial, the claim that depraved indifference was the required mental state was not "[r]easonably [a]vailable" to his counsel.  (Dkt. No. 3: Sanchez Br. at 49; Dkt. No. 13: Sanchez Traverse at 14-18.)

"[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." <u>Reed</u> v. <u>Ross</u>, 468 U.S. 1, 16, 104 S. Ct. 2901, 2910 (1984); <u>accord</u>, <u>e.g.</u>, <u>Bousley</u> v. <u>United States</u>, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998) ("[W]e have held that a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default.").  If, however, "the basis of a constitutional claim [wa]s available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." <u>Engle</u> v. <u>Isaac</u>, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982); <u>accord</u>, <u>e.g.</u>, <u>Bousley</u> v. <u>United States</u>, 523 U.S. at 623 n.2, 118 S. Ct. at 1611 n.2.

---

[40/]    <u>See also</u>, <u>e.g.</u>, <u>Messiah</u> v. <u>Duncan</u>, 435 F.3d 186, 195 (2d Cir. 2006); <u>Green</u> v. <u>Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005); <u>Smith</u> v. <u>Duncan</u>,  411 F.3d 340, 347 (2d Cir. 2005); <u>DeBerry</u> v. <u>Portuondo</u>, 403 F.3d 57, 64 (2d Cir.), <u>cert. denied</u>, 546 U.S. 884, 126 S. Ct. 225 (2005); <u>St. Helen</u> v. <u>Senkowski</u>, 374 F.3d 181, 183-84 (2d Cir. 2004), <u>cert. denied</u>, 543 U.S. 1058, 125 S. Ct. 871 (2005); <u>DiGuglielmo</u> v. <u>Smith</u>, 366 F.3d 130, 135 (2d Cir. 2004);  <u>Jones</u> v. <u>Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996), <u>cert. denied</u>, 520 U.S. 1108, 117 S. Ct. 1116 (1997); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990).

Thus, this Court must determine whether, at the time of Sanchez's trial in March 2004, the argument that depraved indifference was the proper mental state for depraved indifference murder was reasonably available to defense counsel.

At the time of Sanchez's trial in 2004, the law regarding depraved indifference murder was reflected in People v. Register, 60 N.Y.2d 270, 469 N.Y.S.2d 599 (1983), overruled by People v. Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691 (2006), which ruled "the statutory definition of depraved mind murder include[d] both a mental element ('recklessly') and a voluntary act ('engaging in conduct which creates a grave risk of death to another person')." People v. Register, 60 N.Y.2d at 276, 469 N.Y.S.2d at 601. The required showing of "'circumstances evincing a depraved indifference to human life'" referred to "neither the mens rea nor the actus reus. If it states an element of the crime at all, it is not an element in the traditional sense but rather a definition of the factual setting in which the risk creating conduct must occur." People v. Register, 60 N.Y.2d at 276, 469 N.Y.S.2d at 601-02. Thus, it was the objective circumstances in which the conduct occurred that distinguished the crime of depraved indifference murder from intentional murder and reckless manslaughter. People v. Register, 60 N.Y.2d at 276-78, 469 N.Y.S.2d at 601-02.

In People v. Sanchez, 98 N.Y.2d 373, 375-76, 748 N.Y.S.2d 312, 313 (2002), overruled by People v. Feingold, 7 N.Y.3d at 294, 819 N.Y.S.2d at 695, the Court of Appeals adhered to Register, affirming a depraved indifference murder conviction of the defendant who reached around from behind a door and fired into an area where children were playing, striking the victim in the chest. The Court of Appeals found that "defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the

level of manifested depravity needed to establish murder under Penal Law § 125.25(2)." People v. Sanchez, 98 N.Y.2d at 378, 748 N.Y.S.2d at 314.  Therefore, the jury "could reasonably conclude that defendant's conduct was so manifestly destined to result in [the victim's] death as to deserve the same societal condemnation as purposeful homicide." People v. Sanchez, 98 N.Y.2d at 378, 748 N.Y.S.2d at 314.   The Court of Appeals reaffirmed Register, ruling "the requirement of circumstances evincing a depraved indifference to human life under Penal Law § 125.25(2) murder focuses not on the subjective intent of the defendant, 'but rather upon an  objective assessment of the degree of risk presented by defendant's reckless conduct.'" People v. Sanchez, 98 N.Y.2d at 379-80, 748 N.Y.S.2d at 315 (quoting People v. Register, 60 N.Y.2d at 277, 469 N.Y.S.2d at 602).  The Court of Appeals made clear that the "crux" of depraved indifference murder was "recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct." People v. Sanchez, 98 N.Y.2d at 380, 748 N.Y.S.2d at 316.

Thus, at the time of Sanchez's trial in 2004, under Register and its progeny, it was appropriate for trial courts to let the jury decide whether defendants should be convicted of intentional murder or depraved indifference murder: "strong proof of intent did not foreclose the jury from finding recklessness and depraved indifference." Policano v. Herbert, 7 N.Y.3d 588, 600, 825 N.Y.S.2d 678, 687 (2006).  At the time, the Court of Appeals reasoned that "'[p]urposeful homicide itself is the ultimate manifestation of indifference to the value of human life,'" and "the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent–for example, a point-blank shooting of the victim in the head–likewise demonstrated depraved indifference." Policano v. Herbert, 7 N.Y.3d at 599, 601, 825 N.Y.S.2d at

686-87.  Thus, under Register and its progeny at the time of Sanchez's trial, "where both intentional and depraved indifference murder were charged in one-on-one shootings or knifings, these counts were submitted to the jury for it to sort out the defendant's state of mind unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally." Policano v. Herbert, 7 N.Y.3d at 600-01, 825 N.Y.S.2d at 687.

In People v. Hafeez, 100 N.Y.2d 253, 256-58, 762 N.Y.S.2d 572, 573-75 (2003), the Court of Appeals ruled that depraved indifference murder was improper where, after a prior confrontation with the victim, a co-defendant plotted revenge for months before isolating the victim with defendant's help and stabbing the victim once in the heart.  In reversing the depraved indifference murder conviction, the Court of Appeals noted that it was "a quintessentially intentional attack directed solely at the victim" where the "'heightened recklessness' required for depraved indifference murder was simply not present."  People v. Hafeez, 100 N.Y.2d at 258-59, 762 N.Y.S.2d at 575.  By distinguishing the facts of the case from Sanchez (People v. Hafeez, 100 N.Y.2d at 258-59, 762 N.Y.S.2d at 575), the Court of Appeals continued its adherence to the Register/Sanchez formulation of depraved indifference murder.

Despite twenty years as precedent, however, by March 2004 there was growing opposition to the notion that recklessness was the mens rea element of depraved indifference murder.  In Register itself in 1983, Judge Jasen (joined by Chief Judge Cook and Judge Meyer) dissented, arguing that depraved indifference was the proper culpable mental state for depraved indifference murder.  People v. Register, 60 N.Y.2d at 281-88, 469 N.Y.S.2d at 604-08 (Jasen, J., dissenting).  Judge Jasen noted that, under the predecessor statutes, the requisite mens rea for

depraved indifference murder was "a depraved mind." People v. Register, 60 N.Y.2d at 281-82, 469

N.Y.S.2d at 604-05 (Jasen, J., dissenting).[41/]   While the statute's language changed to "'depraved

indifference,'"[42/] the Legislature's intent "was made abundantly clear by the State commission in

declaring that the new statute was intended to be 'substantially a restatement' of the former." People

v. Register, 60 N.Y.2d at 282, 469 N.Y.S.2d at 605 (Jasen, J., dissenting).  Judge Jasen further noted

that the Court of Appeals had consistently "viewed the 'depraved mind' element as a culpable mental

state" since Darry v. People, 10 N.Y. 120 (1854).  People v. Register, 60 N.Y.2d at 282-83, 469

N.Y.S.2d at 605-06 (Jasen, J., dissenting).  Therefore, Judge Jasen argued, depraved indifference

---

[41/]      For example, former Penal Law § 1044 provided:

> The killing of a human being, unless it is excusable or justifiable, is murder
> in the first degree, when committed:
>
> . . . .
>
> 2. By an act imminently dangerous to others, and evincing a depraved mind,
> regardless of human life, although without a premeditated design to effect the death
> of any individual. . . .

Penal Law § 1044(2) (as codified in 1909).

[42/]      Under the current Penal Law § 125.25:

> A person is guilty of murder in the second degree when:
>
> . . . .
>
> 2.  Under circumstances evincing a depraved indifference to human life, he
> recklessly engages in conduct which creates a grave risk of death to another person,
> and thereby causes the death of another person. . . .

Penal Law § 125.25(2).

should continue to be the culpable mental state under the current statute.  People v. Register, 60

N.Y.2d at 282, 469 N.Y.S.2d at 605 (Jasen, J., dissenting).

Judge Jasen further argued that, by only requiring a reckless mental state, the four

judge Register majority "effectively eviscerate[d] the distinction between [reckless] manslaughter

in the second degree and murder in the second degree with respect to the accused's state of mind."

People v. Register, 60 N.Y.2d at 284, 469 N.Y.S.2d at 606 (Jasen, J., dissenting) (citations omitted).

Judge Jasen noted:

> While there may be a technical distinction between a "grave" risk [required for
> depraved indifference murder] and a "substantial" one [required for reckless
> manslaughter], the only real difference is about 15 years in prison.  To accept this
> distinction as justification for the disparate penalties which the respective crimes
> carry defies basic principles of fairness and logic.  I simply cannot agree that the
> Legislature intended that convictions for murder as opposed to manslaughter would
> turn upon the nature of the objective surrounding circumstances regardless of
> whether or not the accused was aware of those circumstances or could appreciate the
> consequences of his conduct.

People v. Register, 60 N.Y.2d at 285, 469 N.Y.S.2d at 607 (Jasen, J., dissenting) (citation omitted).

Opposition to Register continued with Judge Bellacosa's 1989 dissent in People v.

Roe, arguing that the term "depraved" indicated a subjective quality:

> The catapulting ingredients [between depraved indifference murder and
> reckless manslaughter] are gravity and depravity.  Other synonyms used to try to
> understand the essence of the escalating difference include malignant, malicious,
> callous, cruel, wanton, unremorseful, reprehensible and the like.  The semantics
> alone prove that the analysis necessarily includes some subjective, gradational
> assessment.

People v. Roe, 74 N.Y.2d 20, 30, 544 N.Y.S.2d 297, 302 (1989) (Bellacosa, J., dissenting).

Thirteen years later in 2002, in Sanchez, Judge Rosenblatt issued a lengthy dissent in which he reviewed the history of New York cases leading up to Register and agreed with the Register dissenters that depraved indifference, not recklessness, was the proper mens rea for depraved indifference murder.  People v. Sanchez, 98 N.Y.2d at 394-98, 748 N.Y.S.2d at 326-29 (Rosenblatt, J., dissenting).  Judge Rosenblatt, echoing Judge Jasen, noted that under the prior law, depraved indifference murder required a "'depraved mind,'" and, despite changing the language to "'depraved indifference to human life,'" "the Legislature continued to contemplate a mental state so morally perverse, and so indifferent to the consequences to human life, as to be considered depraved."  People v. Sanchez, 98 N.Y.2d at 396, 748 N.Y.S.2d at 327-28 (Rosenblatt, J., dissenting).  Judge Rosenblatt criticized the Court's majority for "fully and inseparably" merging the crimes of intentional murder and depraved indifference murder, and "conflat[ing] depraved indifference murder with reckless manslaughter."  People v. Sanchez, 98 N.Y.2d at 394, 748 N.Y.S.2d at 326 (Rosenblatt, J., dissenting).  Judges Smith and Ciparick also separately dissented in Sanchez, making Sanchez, like Register, a 4-3 opinion.  People v. Sanchez, 98 N.Y.2d at 388, 416, 748 N.Y.S.2d at 321, 342 (Smith, J., and Ciparick, J., dissenting).

A year later in Hafeez, Judge Rosenblatt concurred in reversing the depraved indifference murder conviction, but wrote separately to stress once again that "the critical element in depraved indifference murder is not recklessness, but depraved indifference."  People v. Hafeez, 100 N.Y.2d at 260, 762 N.Y.S.2d at 576 (Rosenblatt, J., concurring).

In addition to these dissents, articles in the New York Law Journal discussed the proper mens rea for depraved indifference murder.  Sidney H. Stein (now District Judge Stein)

addressed Judge Bellacosa's dissent in <u>Roe</u> regarding the proper mental state for depraved

indifference murder:

> Moreover, [Judge Bellacosa's] opinion indicates a strong disagreement with the majority as to the mental state required for depraved indifference murder. Dissenting from the notion that recklessness is the only relevant inquiry into the defendant's subjective mental state, the judge referred many times to evidence relating to [the defendant's] state of mind, which he asserts should have been considered in the determination of depraved indifference.

Sidney H. Stein, <u>Reasonable Care; Attorney Privilege, Et Al.</u>, July 20, 1989 N.Y. L.J. 3 col. 1.  In

2003, Professor Abraham Abramovsky's article also focused on the mens rea issue, addressing the

dissents of Judges Bellacosa and Rosenblatt and concluding that the New York Court of Appeals

"should restore the moral dimension to depraved indifference murder."  Abraham Abramovsky, <u>Re-</u>

<u>Evaluating Depraved Indifference Under New York Law</u>, June 24, 2003 N.Y. L.J. 3 col. 1.[43/]  Thus,

as Sanchez correctly notes, "in the two years leading up to Mr. Sanchez's trial, the scope of the

depraved indifference murder statute  remained a topic of intense debate within the New York legal

community."  (Sanchez Br. at 58.)

---

[43/]   <u>See also</u>, Paul Shechtman, <u>First Appeal of Death Sentence Heard</u>, Oct. 7, 2002 N.Y. L.J. 4 col. 1 (addressing Judge Rosenblatt's <u>Sanchez</u> dissent and noting "[f]or Judge Rosenblatt, the majority's approach took the depraved out of depraved indifference and merged intentional and depraved indifference murder fully and inseparably." (quotations omitted)); Bernard E. Gegan, <u>More Cases of Depraved Mind Murder: The Problem of Mens Rea</u>, 64 St. John's L. Rev. 429, 435 (1990) ("Unless depraved indifference is acknowledged to be a real part of the mens rea, we are left with a common mens rea of recklessness for both manslaughter and murder, exactly the [New York Court of Appeals'] conclusion as to the legislative intent.  Since we are not dealing with a traditionally regulatory or malum prohibitum offense, but with the gravest felony known to the law, it is anomalous that this should be the case.  How can it be just to punish for murder, one offender whose mental culpability is no greater than that of another guilty only of manslaughter–thereby exposing the former to an additional fifteen years of imprisonment?").

Moreover, against the backdrop of the dissenting opinions in <u>Register</u> and its progeny, the defense attorney in <u>People</u> v. <u>Jean-Baptiste</u>, in 2003, preserved the same insufficiency claim now raised by Sanchez by "anticipating the change in the law brought by <u>Feingold</u>" and making a specific motion to dismiss. <u>People</u> v. <u>Jean-Baptiste</u>, 11 N.Y.3d 539, 544, 872 N.Y.S.2d 701, 705 (2008).[44/]  Additionally, in <u>People</u> v. <u>George</u>, the New York Court of Appeals, based on <u>Feingold</u>, affirmed the Third Department's reduction of defendant's 2003 depraved indifference murder conviction to second degree manslaughter after finding that "defendant properly preserved for [] review his challenge to the legal sufficiency of his depraved indifference murder conviction." <u>People</u> v. <u>George</u>, 11 N.Y.3d 848, 849, 872 N.Y.S.2d 63 (2008).[45/]

Furthermore, prior to Sanchez's 2004 trial, the argument that recklessness was not the proper depraved indifference mens rea was raised on federal habeas review in <u>Jones</u> v. <u>Keane</u>, where petitioner argued that:

> the New York Court of Appeals erred in concluding, beginning with <u>People</u> v. <u>Register</u>, that depraved indifference murder does not require "an 'uncommonly evil and morally perverse frame of mind,'" and instead that "the crux" of this crime "is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of risk of death from the defendant's conduct."

---

[44/]   While the Court of Appeals decision did not mention when the trial occurred, the Second Department's decision noted that the judgment was rendered on May 6, 2003. <u>People</u> v. <u>Jean-Baptiste</u>, 44 A.D.3d 792, 792, 844 N.Y.S.2d 72, 73 (2d Dep't 2007), <u>aff'd</u>, 11 N.Y.3d 539, 872 N.Y.S.2d 701 (2008).

[45/]   While the Court of Appeals decision did not mention when the trial occurred, the Third Department's decision noted that the judgment was rendered on January 13, 2003. <u>People</u> v. <u>George</u>, 43 A.D.3d 560, 561, 840 N.Y.S.2d 662, 663 (3d Dep't 2007), <u>aff'd</u>, 11 N.Y.3d 848, 849, 872 N.Y.S.2d 63 (2008).

Jones v. Keane, 329 F.3d 290, 293 (2d Cir.) (citations omitted), cert. denied, 540 U.S. 1046, 124 S. Ct. 804 (2003).

Accordingly, this Court finds that, at the time of Sanchez's trial in March 2004, the argument that depraved indifference was the proper mental state for depraved indifference murder was reasonably available to defense counsel.  While this argument only may have been a dissenting viewpoint (albeit shared by three of the seven judges of the Court of Appeals), it is evident that it was an issue that was being challenged in the courts.  Cf. Engle v. Isaac, 456 U.S. at 132-33 & n.41, 102 S. Ct. at 1574 & n.41 (noting that a claim was not novel because, inter alia, "[e]ven those decisions rejecting the defendant's claim, of course, show that the issue had been perceived by other defendants and that it was a live one in the courts at the time."); Roman v. Abrams, 822 F.2d 214, 223 (2d Cir. 1987) (finding that a claim was not novel where, inter alia, although a four judge majority of the New York Court of Appeals had recently rejected the claim, three dissenting judges had accepted it.).  Consequently, because "the basis of a constitutional claim [wa]s available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." Engle v. Isaac, 456 U.S. at 134,  102 S. Ct. at 1575; accord, e.g., Bousley v. United States, 523 U.S. at 623 n.2, 118 S. Ct. at 1611 n.2.[46/]  Indeed, in arguing counsel's ineffectiveness, Sanchez

_____

[46/]    This Court is aware that other judges in this Circuit have found cause to excuse a procedural bar based on the novelty of this claim.  Wells v. Perez, 10 Civ. 1107, Dkt. No. 14, slip op. at 30-34 (S.D.N.Y. Dec. 8, 2010); Petronio v. Walsh, 736 F. Supp. 2d 640, 656-57 (E.D.N.Y. 2010); Fernandez v. Smith, 558 F. Supp. 2d 480, 493-94 (S.D.N.Y. 2008) (Chin, D.J.).  To the extent these decision relied on the "rapidly-changing and unpredictable nature" (Wells
(continued...)

specifically asserts that "Sanchez presented evidence that Ms. Stewart actually knew at the time of his trial that the law was evolving."  (Sanchez Traverse at 20.)[47/]  Thus, since the argument was reasonably available in 2004 to counsel generally and to Sanchez's counsel specifically, "unavailability" cannot be used as "cause" to avoid the procedural default.

### F.    Sanchez's Trial Counsel was not Ineffective for Failing to Make a Specific Motion to Dismiss the Depraved Indifference Murder Count

Sanchez alternatively asserts that he can show "cause" to avoid the procedural default because his trial counsel "knew at the time of trial that the definition of depraved indifference

---

[46/]    (...continued)
v. Perez, 10 Civ. 1107, Dkt. No. 14, slip op. at 33), the "drastic change" (Petronio v. Walsh, 736 F. Supp. 2d at 657 ) or "evolving state" (Fernandez v. Smith, 558 F. Supp. 2d at 494) of New York's depraved indifference jurisprudence, this factor supports this Court's finding. After all, these changes, culminating in Feingold's statement that depraved indifference is the proper mens rea element, were perceived and advocated by the various New York Court of Appeals Judges' dissenting opinions.  Moreover, unlike in the cases finding unavailability, this Court's finding is supported by Sanchez's counsel's statement in her affidavit in support of Sanchez's § 440 motion that, at the time of trial, she was "generally aware of the unsettled state of the law regarding depraved indifference murder and that some courts had found that depraved indifference murder was not adequately differentiated from reckless manslaughter." (See page 17 above.)

[47/]    See also Sanchez Br. at 5 ("Sanchez presented convincing evidence that his attorney, Ms. Stewart, actually knew at the time of his trial that the law of depraved indifference murder was in flux."); Sanchez Br. at 58-59 ("[I]n the two years leading up to Mr. Sanchez's trial, the scope of the depraved indifference murder statute remained a topic of intense debate within the New York legal community. . . . Competent counsel would have been aware that the definition of depraved indifference murder was changing . . . ."); Dkt. No. 2: Sanchez Pet. Ex. D-1: Sanchez § 440 Br. at 2 ("In the period leading up to Mr. Sanchez's trial, courts throughout New York were grappling with changes in the law of depraved indifference murder."); Sanchez Pet. Ex. E-1: Sanchez 1st Dep't § 440 Br. at 33 ("At the time of Mr. Sanchez's trial, his attorney, Lynne F. Stewart, knew that the law was evolving to preclude a conviction for depraved indifference murder based on either intentional or merely reckless conduct.").

murder was evolving but failed to make any specific motion to dismiss the depraved indifference murder count."  (Dkt. No. 3: Sanchez Br. at 57-62; Dkt. No. 13: Sanchez Traverse at 19-21.) Sanchez further argues, "the fact that the Court of Appeals had not yet overruled the Register standard cannot excuse [his trial counsel's] failure" to preserve the insufficiency claim.  (Sanchez Br. at 61.)

   It is well established that a claim of ineffective assistance can constitute "cause" to excuse a procedural default.  Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" as "'cause' to excuse a procedural default.").[48]  In order to establish cause, however, "the assistance must have been so ineffective as to violate the Federal Constitution." Edwards v. Carpenter, 529 U.S. at 451, 120 S. Ct. 1591.  "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim."  Edwards v. Carpenter, 529 U.S. at 451, 120 S. Ct. 1591.

  **1.**  **The Strickland v. Washington Standard on Ineffective Assistance of Counsel**

   In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel

---

[48]  See, e.g., Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986) ("Ineffective assistance of counsel . . . is cause for a procedural default."); Jones v. Armstrong, 367 F. App'x 256, 257, (2d Cir.), cert. denied, 130 S. Ct. 3367 (2010); Calderon v. Perez, 10 Civ. 2562, 2011 WL 293709 at *26 n.40 (S.D.N.Y. Jan. 28, 2011) (Peck, M.J.); Fernandez v. Artus, 07 Civ. 2532, 2009 WL 1586271 at *15 (S.D.N.Y. June 8, 2009) (Peck, M.J.).

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064.[49/]  This performance is to be judged by an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at 2064.[50/]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[51/]  Ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking'. . . .  Decisions by criminal defense counsel are often choices among bad alternatives . . . ."  Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010); accord, Harrington v. Richter, 131 S. Ct. at 788 ("It is 'all too tempting' to 'second-guess counsel's assistance after

---

[49/]   Accord, e.g., Harrington v. Richter, 131 S. Ct. 770, 787 (2011); Premo v. Moore, 131 S. Ct. 733, 739 (2011); Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); Bell v. Miller, 500 F.3d 149, 156-57 (2d Cir. 2007); Henry v. Poole, 409 F.3d 48, 62-63 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

[50/]   Accord, e.g., Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 521, 123 S. Ct. at 2535; Bell v. Cone, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); Henry v. Poole, 409 F.3d at 63.

[51/]   Accord, e.g., Harrington v. Richter, 131 S. Ct. at 787-88; Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Bierenbaum v. Graham, 607 F.3d 36, 50-51 (2d Cir. 2010); Bell v. Miller, 500 F.3d at 156-57; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

conviction or adverse sentence.'").  Petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment."  Harrington v. Richter, 131 S. Ct. at 787 (quotations omitted).

Second, the defendant must show prejudice from counsel's performance.  Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064.  The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."  Id. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S. Ct. at 2068.[52/]

---

[52/]    See also, e.g., Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"[A] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bierenbaum v. Graham, 607 F.3d at 51.  The phrase "reasonable probability," despite its language, should not be confused with "probable" or "more likely than not."  Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); accord, e.g., Harrington v. Richter, 131 S. Ct. at 792; Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland"); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit

(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules."  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 696, 104 S. Ct. at  2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  <u>Id.</u>

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'"  <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695-96, 104 S. Ct. at 2069); <u>accord</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>Hoke</u>, 928 F.2d 534, 538 (2d Cir. 1991).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  <u>Harrington</u> v. <u>Richter</u> 131 S. Ct. at 788.

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 697, 104 S. Ct. at 2069.[53]

In addition, the Supreme Court has counseled that:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable

---

[52] (...continued)
somewhat more likely than a "reasonable possibility."  <u>Strickler</u> v. <u>Greene</u>, 527 U.S. at 291, 119 S. Ct. at 1953; <u>cf.</u> <u>id.</u> at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

[53] <u>Accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Robbins</u>, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

> professional judgments support the limitations on investigation. . . . In any
> ineffectiveness case, a particular decision not to investigate must be directly assessed
> for reasonableness in all the circumstances, applying a heavy measure of deference
> to counsel's judgments.

Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[54]

"The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d at 199; accord, e.g., Bierenbaum v. Graham, 607 F.3d at 50-51; Bell v. Miller, 500 F.3d at 156-57. "'Surmounting Strickland's high bar is never an easy task.'" Harrington v. Richter, 131 S. Ct. at 788 ("the Strickland standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one.").

---

[54] See also, e.g., Harrington v. Richter, 131 S. Ct. at 789-90 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Moreover, an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal." (citations omitted)); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

## 2.      **Strickland and the AEDPA Review Standard**

For purposes of this Court's AEDPA analysis, "the <u>Strickland</u> standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).[55]  "For AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'"  <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95 n.8.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating reasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. 770, 788 (2011) (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>Premo</u> v. <u>Moore</u>, 131 S. Ct. at 740-41; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698-99, 122 S. Ct. at 1852 ("For [petitioner] to succeed, however, he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. . . . Rather, he must show that the [First Department] applied <u>Strickland</u> to

---

[55]      <u>See also</u>, <u>e.g.</u>, <u>Premo</u> v. <u>Moore</u>, 131 S. Ct. 733, 743 (2011); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003); <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 518-19 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).

the facts of his case in an objectively unreasonable manner."); see also, e.g., Yarborough v. Gentry,

540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); Mosby v. Senkowski, 470 F.3d at 519.

### 3.      Sanchez's Trial Counsel Was Not Ineffective

As noted on page 53 above, Register was the controlling precedent at the time of

Sanchez's trial, and under Register:

> [W]here both intentional and depraved indifference murder were charged in
> one-on-one shootings or knifings, these counts were submitted to the jury for it to
> sort out the defendant's state of mind unless there was absolutely no evidence
> whatsoever that the defendant might have acted unintentionally.  That a defendant's
> acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty
> verdict on a theory of depraved indifference.  To the contrary and as the dissenters
> in both Register and Sanchez vociferously protested, under the Register formulation
> the very facts establishing a risk of death approaching certainty and thus presenting
> compelling circumstantial evidence of intent-for example, a point-blank shooting of
> the victim in the head-likewise demonstrated depraved indifference.

Policano v. Herbert, 7 N.Y.3d 588, 600-601, 825 N.Y.S.2d 678, 687 (2006).

Although New York Court of Appeals' decisions after Sanchez's trial would chip

away at, and ultimately overturn, Register on the grounds that depraved indifference describes the

culpable mental state of the crime, rather than the voluntary act, it was under the legal rubric of

Register and its progeny that Sanchez was tried and convicted, and that this Court must evaluate trial

counsel's performance.  See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (In assessing the

attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the

particular case, "'viewed as of the time of counsel's conduct.'" (quoting Strickland)), cert. denied,

513 U.S. 820, 115 S. Ct. 81 (1994); Lisojo v. Rock, 09 Civ. 7928, 2010 WL 1223086 at *32

(S.D.N.Y. Mar. 31, 2010) (Peck, M.J.) (On habeas review, defense counsel's performance is

evaluated by the state of New York's depraved indifference murder case law at the time of trial.), report & rec. adopted, 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010); Fore v. Ercole, 594 F. Supp. 2d 281, 305 (E.D.N.Y. 2009) ("[T]rial counsel cannot be held to be ineffective when he reasonably relied on the interpretation of New York law regarding depraved indifference murder as it was at the time of petitioner's trial."); Soto v. Conway, 565 F. Supp. 2d 429, 436 (E.D.N.Y. 2008) ("[I]n reviewing counsel's performance for cause, this Court considers not what the law of New York was or is, but rather whether, in light of the case law known to him at the time, counsel's conduct fell below an objective standard of reasonableness.").

"Sanchez does not dispute that the evidence at his trial, in March 2004, was sufficient to prove depraved indifference murder under the legal standard at that time."  (Dkt. No. 3: Sanchez Br. at 66.)  At trial, Sanchez testified that he was "angry" when he spoke to Herrera on the phone after 6:00 a.m., and took the "biggest knife" he could find before confronting her on the street.  (See page 7 above.)  Sanchez further testified that he took the knife out of his pocket and "waved" it around to "protect" himself from Maldonado and Bright who were beating him.  (See page 8 above.) When Maldonado charged at him again, Sanchez stabbed Maldonado with enough force to penetrate the knife five to six inches into Maldonado's abdomen.  (See pages 4-5, 8 & n.6 above.)

Given the state of New York's depraved indifference law at the time of Sanchez's trial, and in light of the evidence presented at trial, a motion to dismiss the depraved indifference count was unwarranted.  See, e.g., People v. Sanchez, 98 N.Y.2d 373, 378, 748 N.Y.S.2d 312, 314 (2002) ("[A]ccepting the jury's determination that the killing . . . was not intentional, defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing

his death that it readily meets the level of manifested depravity needed to establish murder under Penal Law § 125.25 (2)."), overruled by People v. Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691 (2006); Policano v. Herbert, 7 N.Y.3d at 599-602, 825 N.Y.S.2d at 686-87 (The requirement that there be "[objective] circumstances evincing a depraved indifference to human life was fulfilled if the defendant's actions created an almost certain risk of death," and "unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally," the "question of the defendant's state of mind [was] . . . a matter for the jury.").

Indeed, Sanchez concedes that "[i]n March 2004, it would have been futile for [defense counsel] Ms. Stewart to make that [insufficient evidence as to depraved indifference] claim. . . . At the time of Mr. Sanchez's trial, . . . '[c]ounsel could hardly have been expected to anticipate the parameters of the subsequent decisions in Payne, Suarez, or certainly Feingold.'" (Sanchez Br. at 55-56.)  Consequently, Sanchez's trial counsel cannot be deemed ineffective for failing to raise and thus preserve a then-meritless claim.  See, e.g., Grant v. Woods, 313 F. App'x 376, 377 (2d Cir.) (Trial counsel was not ineffective for failing to raise a sufficiency objection because "[u]nder New York law at the time of [petitioner's] conviction and sentencing, where both depraved indifference and intentional murder were charged 'in one-on-one shootings or knifings, these counts were submitted to the jury for it to sort out the defendant's state of mind unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally.'" (quoting Policano v. Herbert, 7 N.Y.3d at 600-01, 825 N.Y.S.2d at 687)), cert. denied, 130 S. Ct. 291 (2009); Lisojo v. Rock, 2010 WL 1223086 at *33 (petitioner bound victim's arms and legs, severely beat her and stabbed her repeatedly and fatally with a kitchen knife; counsel not ineffective

for failing to specifically object to the sufficiency of evidence as to depraved indifference murder because Register was the controlling law); Gaskin v. Graham, No. 08-CV-1124, 2009 WL 5214498 at *23-24 (E.D.N.Y. Dec. 30, 2009) (petitioner held a gun to victim's head and fired a fatal shot; counsel not ineffective for failure to object to the sufficiency of evidence as to depraved indifference murder because Register was the controlling law); Fore v. Ercole, 594 F. Supp. 2d at 305 (petitioner fired multiple shots through a car window killing the victim but testified that he did not intend to kill the victim; counsel was not ineffective for failure to argue that there was no evidence that petitioner acted intentionally because Register was the controlling law); Cruz v. Conway, No. 05 CV 4750, 2007 WL 1651855 at *7 (E.D.N.Y. June 6, 2007) (petitioner shot victim in the back and shot him again after he fell; counsel not ineffective for failure to object to the sufficiency of evidence as to depraved indifference murder because Register was the controlling law); Crespo v. Fischer, 06 Civ. 2577, 2006 WL 3486805 at *7-8 (S.D.N.Y. Nov. 27, 2006) (petitioner placed a plastic bag over victim's head, sealed it at the neck, covered the victim's head and face with duct tape, then kicked victim's head and remained present until victim died; appellate counsel not ineffective for failure to raise an on appeal the sufficiency of evidence as to depraved indifference because Register was the controlling law).

The Sixth Amendment does not require counsel to presage changes in the law.  See, e.g., Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir.) ("[C]ounsel [cannot] be deemed incompetent for failing to predict that the New York Court of Appeals would later overrule the Second Department's reasonable interpretation of New York law."), cert. denied, 513 U.S. 888, 115 S. Ct. 232 (1994); Mayo v. Henderson, 13 F.3d at 533 ("Counsel is not required to forecast changes in the

governing law."); <u>Alexander</u> v. <u>Graham</u>, No. 07-CV-59, 2008 WL 4239167 at *7 (E.D.N.Y. Sept. 11, 2008) ("[T]rial counsel was not ineffective for . . . failing to foresee the change in New York [depraved indifference] law."); <u>Pena</u> v. <u>United States</u>, 04 Civ. 9700, 00 Cr. 36, 2005 WL 1176073 at *6 (S.D.N.Y. May 18, 2005) (Peck, M.J.) ("Generally, counsel is not ineffective for failing to forecast a change in the law."), <u>aff'd</u>, 534 F.3d 92 (2d Cir.), <u>cert. denied</u>, 129 S. Ct. 424 (2008).[56/]

---

[56/]    <u>See also</u>, <u>e.g.</u>, <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 317 (2d Cir. 2001) ("it was reasonable for the coram nobis court not to have expected appellate counsel to predict changes in state law or to anticipate the Court of Appeals' [later] decision"); <u>Walker</u> v. <u>Jones</u>, 10 F.3d 1569, 1573 (11th Cir.) (rejecting petitioner's ineffective assistance of counsel claim for failure to object to a jury charge later found erroneous, where the lower courts had rejected challenges to the charge and the Supreme Court had not yet ruled on the issue), <u>cert. denied</u>, 511 U.S. 1111, 114 S. Ct. 2111 (1994); <u>Larrea</u> v. <u>Bennett</u>, 01 Civ. 5813, 2002 WL 1173564 at *25 & n.40 (S.D.N.Y. May 31, 2002) (Peck, M.J.) ("Petitioner's 'trial counsel also was not required to forecast a <u>true</u> change in the law."), <u>report & rec. adopted</u>, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), <u>aff'd</u>, 368 F.3d 179 (2d Cir. 2004); <u>Fluellen</u> v. <u>Walker</u>, 97 Civ. 3189, 2000 WL 684275 at *12 (May 25, 2000) (Peck, M.J.) ("Even assuming that, as [petitioner] argues, <u>People</u> v. <u>Antommarchi</u> . . . suggests that the charge in [petitioner's] case was erroneous, that case was decided nearly three years after [petitioner's] trial, and is therefore irrelevant to an assessment of trial counsel's performance."), <u>aff'd</u>, 41 F. App'x 497 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 978, 123 S. Ct. 1787 (2003); <u>Mingo</u> v. <u>Artuz</u>, No. 95 CV 1087, 1999 WL 301686 at *3 (E.D.N.Y. May 5, 1999); <u>Paulino</u> v. <u>United States</u>, 97 Civ. 2107, 95 Cr. 116, 1998 WL 214877 at *5 (S.D.N.Y. Apr. 28, 1998) ("A defendant is entitled to a competent lawyer, not an omniscient one."); <u>Stanley</u> v. <u>Kuhlman</u>, 10 F. Supp. 2d 250, 255 (E.D.N.Y. 1998) ("defense counsel was not ineffective for failing to foresee" change effected by Court of Appeals decision, as it "was not widely anticipated"); <u>Marino</u> v. <u>United States</u>, 97 Civ. 1884, 89 Cr. 341, 1997 WL 714879 at *3 (S.D.N.Y. Nov. 17, 1997) ("Counsel's failure to predict a change in the law does not constitute a performance falling below objectively reasonable professional standards.").

Nevertheless, Sanchez argues that his trial counsel Stewart "was indeed aware that the definition of depraved indifference murder was being debated across the state" as demonstrated by her comment during the charge conference that courts had been troubled by the confusingly similar definitions of depraved indifference murder and reckless manslaughter.  (Sanchez Br. at 59-61; see also pages 11, 62 & n.47 above.)  "Strickland, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."  Harrington v. Richter, 131 S. Ct. 770, 790 (2011).  Consequently, judging her performance objectively, defense counsel was not ineffective because the trial evidence established depraved indifference murder under Register.  See, e.g., Gaskin v. Graham, 2009 WL 5214498 at *23-24 (counsel was not ineffective since, "[g]iven the Register/Sanchez legal framework in New York at the time of petitioner's trial in 2002, both trial and appellate counsel could have reasonably believed that it would have been utterly futile to argue that the evidence was insufficient to sustain depraved indifference murder" where petitioner held a gun to victim's head and fired a fatal shot.); see also cases cited on pages 71-72 above.

Accordingly, Sanchez has failed to establish ineffective assistance of trial counsel as "cause" to excuse his procedural default.[57]

---

[57]   Because Sanchez has not shown cause for the procedural default, this Court need not consider the prejudice prong.  See, e.g., Brown v. Ercole, 353 F. App'x 518, 520 (2d Cir. 2009); see also, e.g., Stepney v. Lopes  760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice."); Gutierrez v. Smith, 06-CV-4939, 2010 WL 3855225 at *8 n.6 (E.D.N.Y. Sept. 27, 2010);
(continued...)

4.      **Ineffective Assistance Compared to Reasonable Availability as "Cause"**

Finally, this Court's finding that defense counsel was not ineffective for failing to raise the sufficiency claim is not inconsistent with this Court's earlier finding, in Section II.E. above, that Sanchez failed to establish cause for his procedural default because the sufficiency argument was reasonably available to counsel at trial.  As noted on pages 52 & 61 above, where "the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default."  Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982).  Based on the dissenting opinions in the Court of Appeals, articles in the legal press, at least one counsel's raising the argument, and Sanchez's counsel's own awareness of these developments, it is clear that the sufficiency argument was reasonably available to Sanchez's counsel at trial.  (See pages 55-62 above.)

In addressing the ineffective assistance of counsel, however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Harrington v. Richter, 131 S. Ct. 770, 788 (2011).  Consequently, while perfect counsel might have made this argument based on the various dissenting opinions and articles discussed above, Strickland does not require

----

57/      (...continued)
Lisojo v. Rock, 2010 WL 1223086 at *27; Bonilla v. Burge, 06 Civ. 4755, 2009 WL 4884092 at *10 (S.D.N.Y. Dec. 17, 2009); Galusha v. Duncan, No. 02 CV 1602, 2007 WL 4198272 at *14 (N.D.N.Y. Nov. 21, 2007); D'Alessandro v. Fischer, 01 Civ. 2551, 2005 WL 3159674 at *9 n.10 (S.D.N.Y. Nov. 28, 2005).

perfection. See, e.g., Harrington v. Richter, 131 S. Ct. at 791 ("Strickland does not guarantee perfect representation, only a reasonably competent attorney." (quotations omitted)).  Thus, even though the defense attorney in Jean-Baptiste in 2003 was able to "anticipat[e] the change in the law brought by Feingold" and raised this sufficiency claim (see People v. Jean-Baptiste, 11 N.Y.3d 539, 544, 872 N.Y.S.2d 701, 705 (2008); see also page 60 above), defense counsel here is not ineffective for failing to be as clairvoyant.   See, e.g., Alexander v. Graham, 2008 WL 4239167 at *7 ("[T]rial counsel was not ineffective for . . . failing to foresee the change in New York [depraved indifference] law."); see also cases cited on pages 72-73 above.  In fact, there were many other defense attorneys who, like counsel here, did not foresee the change in the law and therefore failed to preserve this issue at trial.  See, e.g., People v. Marhone, 57 A.D.3d 803, 804, 870 N.Y.S.2d 375, 376 (2d Dep't 2008) ("The defendant's legal insufficiency claim as to depraved indifference murder is unpreserved for appellate review since he did not object with the necessary specificity at trial," held in 2002.), appeal denied, 12 N.Y.3d 785, 879 N.Y.S.2d 62 (2009); People v. Wells, 53 A.D.3d 181, 187, 188, 862 N.Y.S.2d 20, 24, 25 (1st Dep't) (Judgment July 29, 2005; "Defendant never objected that the trial court was required to find that he acted with a mental state beyond recklessness or that depraved indifference referred to anything other than the circumstances under which the risk-creating conduct took place."), appeal denied, 11 N.Y.3d 858, 872 N.Y.S.2d 81 (2008); People v. Zephirin, 47 A.D.3d 649, 649, 849 N.Y.S.2d 438, 438 (2d Dep't 2008) (Judgment October 14, 2004; challenge to the sufficiency of the depraved indifference element was unpreserved where defense counsel "never argued, or requested that the Supreme Court instruct the jury, that depraved indifference was a culpable mental state."); People v. Bowman, 48 A.D.3d 178, 182-83,

847 N.Y.S.2d 536, 540 (1st Dep't 2007) (Judgment May 13, 2004; defendant's claim that "the evidence fail[ed] to establish the required culpable mental state" was unpreserved for appellate review because defense counsel "neither raised that contention in moving to dismiss nor voiced any objection to the court's charge to the jury on the elements of the crime."), appeal denied, 10 N.Y.3d 808, 857 N.Y.S.2d 42 (2008).  Moreover, the argument would have been futile at trial, because Justice Marcus was bound by Register.  It is, of course, not ineffective to fail to raise a futile claim.[58/]  (See cases cited on pages 71-72 above.)

Accordingly, this Court finds that, even though this sufficiency argument was reasonably available at trial, defense counsel was not ineffective for failing to raise it.

### G.    Sanchez's Actual Innocence Claim Lacks Merit

Sanchez next argues that this Court should address his habeas claim despite the procedural default because failure to do so would result in a "'fundamental miscarriage of justice.'" (Dkt. No. 3: Sanchez Br. at 64-68; Dkt. No. 13: Sanchez Traverse at 21-22.)  Specifically, Sanchez contends that, "[g]iven the absence of any evidence that he acted with depraved indifference to human life, the record conclusively establishes that Steven Sanchez is actually innocent of depraved indifference murder."  (Sanchez Br. at 65.)

---

[58/]    While it is true that raising the argument on the motion to dismiss, while futile at trial, would have preserved the claim for appellate review, trial counsel cannot be ineffective for failing to predict that the New York Court of Appeals would change the law while Sanchez's case remained on direct appeal, nor that the Court of Appeals would apply that change retroactively to cases still on direct appeal.  (See cases cited at page 72-73 above.)  Thus, although Sanchez's counsel was aware of the issue and could have raised it at trial in order to preserve it for appeal, and claims to have had no strategic reason not to, her conduct did not amount to ineffective assistance.

The Supreme Court has explained that the fundamental miscarriage of justice exception is "tied . . . to [a] petitioner's innocence" and exists to protect those who are "actually innocent." Schlup v. Delo, 513 U.S. 298, 321, 324, 115 S. Ct. 851, 864, 865 (1995). Because "'actual innocence' means factual innocence, not mere legal insufficiency," Bousley v. United States, 523 U.S. 614, 623-24, 118 S. Ct. 1604, 1611 (1998); accord, e.g., Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002), "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37, 126 S. Ct. 2064, 2076-77 (2006) (emphasis added); see also, e.g., Schlup v. Delo, 513 U.S. at 324-27, 115 S. Ct. at 865-67 (fundamental miscarriage of justice must be demonstrated by showing through "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."); Murden v. Artuz, 497 F.3d 178, 194 (2d Cir. 2007) ("'To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' This requires 'a stronger showing' than the showing of prejudice necessary to prevail on an ineffective assistance claim.  Actual innocence requires 'not legal innocence but factual innocence.'" (citations omitted)), cert. denied, 552 U.S. 1150, 128 S. Ct. 1083 (2008).

Accordingly, the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "extraordinary case[s]." Schlup v. Delo, 513 U.S. at 321-22, 115 S.

Ct. at 865; see also, e.g., Morrison v. Ercole, 07 Civ. 3576, 2009 WL 161040 at *6 (S.D.N.Y.

Jan. 16, 2009) (Castel, D.J.) ("The Second Circuit has emphasized that the type of evidence on

which claims of actual innocence may be based is strictly limited and that petitioners must meet a

'demanding standard' in order to take advantage of this 'gateway.'").

Sanchez has not provided any new evidence to support his actual innocence claim.

(See Sanchez Br. at 64-68.)  Instead, Sanchez relies on Petronio v. Walsh, 736 F. Supp. 2d 640

(E.D.N.Y. 2010) (Sanchez Br. at 67-68), which ruled that "a petitioner need not offer new evidence

in order to invoke the miscarriage of justice exception." Petronio v. Walsh, 736 F. Supp. 2d at 658.

The Petronio court found petitioner "factually innocent" of depraved indifference murder because,

given the changes to New York's case law since his trial, "no reasonable juror could have convicted

[petitioner] of depraved indifference murder" under the new Feingold standard.  Petronio v. Walsh,

736 F. Supp. 2d at 658.[59]

In reaching this conclusion, the Petronio court relied on Bousley v. United States, 523

U.S. 614, 118 S. Ct. 1604 (1998).  See Petronio v. Walsh, 736 F. Supp. 2d at 658.  In Bousley, the

---

[59]   Similarly, in Fernandez v. Smith, 558 F. Supp. 2d 480, 494 (S.D.N.Y. 2008) (Chin, D.J.),
Judge Chin noted that, even if petitioner's insufficiency claim was barred for lack of
preservation, "a fundamental miscarriage of justice would result if the legal insufficiency
claim were not considered on the merits" because:

> [Petitioner] has made a colorable showing here that he is actually innocent of
> depraved indifference murder.  While the evidence surely proved that he was guilty
> of manslaughter, . . . his actions-even as described by the People at trial-simply did
> not constitute depraved indifference murder as a matter of law, and it would be
> manifestly unjust for him to serve a sentence for a crime that he did not commit.

Fernandez v. Smith, 558 F. Supp. 2d at 494.

petitioner pled guilty to "'using'" a firearm "'during and in relation to a drug trafficking crime'" in violation of 18 U.S.C. § 924(c). Bousley v. United States, 523 U.S. at 616, 118 S. Ct. at 1608. Five years after Bousley's conviction, the Supreme Court ruled in Bailey v. United States, 516 U.S. 137, 144, 149, 116 S. Ct. 501, 506, 508 (1995), that the term "use" requires "'active employment of the firearm,'" and therefore "'a defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds,' or for 'placement of a firearm to provide a sense of security or to embolden.'" Bousley v. United States, 523 U.S. at 617, 118 S. Ct. at 1608. Bousley sought habeas relief, arguing that his plea was involuntary because the plea court "misinformed" him of the elements of the crime. Bousley v. United States, 523 U.S. at 617-18, 118 S. Ct. at 1608. The Supreme Court found this claim procedurally barred because Bousley failed to challenge the validity of his plea on direct appeal. Bousley v. United States, 523 U.S. at 621, 118 S. Ct. at 1610. After rejecting Bousley's attempts to avoid the default, the Supreme Court noted that his claim still could be reviewed if he could establish that he is "'actually innocent.'" Bousley v. United States, 523 U.S. at 623, 118 S. Ct. at 1611. Since petitioner failed to raise an "actual innocence" claim below, the Supreme Court remanded the case "to permit petitioner to attempt to make a showing of actual innocence." Bousley v. United States, 523 U.S. at 623, 118 S. Ct. at 1611.

     Petronio interpreted Bousley as "reflect[ing] that petitioners may show actual innocence not only through the introduction of new evidence but by highlighting intervening changes in the law." Petronio v. Walsh, 736 F. Supp. 2d at 658. This Court disagrees. The Second Circuit has noted Bousley's "actual innocence" analysis "is mere dictum." Doe v. Menefee, 391 F.3d 147, 162 & n.17 (2d Cir. 2004), cert. denied, 546 U.S. 961, 126 S. Ct. 489 (2005); accord, e.g.,

Gutierrez v. Smith, 06-CV-4939, 2010 WL 3855225 at *9 (E.D.N.Y. Sept. 27, 2010) ("[T]he Second Circuit has held that the Supreme Court's 'actual innocence' analysis in Bousley 'is mere dictum.'" (quoting Doe v. Menefee)).

Moreover, prior to Bousley, the Supreme Court made clear that a petitioner must establish "actual innocence" through "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup v. Delo, 513 U.S. at 324, 327, 115 S. Ct. at 865, 867. Nothing in Bousley changed that rule as the Supreme Court merely gave Bousley the opportunity "to attempt to make a showing of actual innocence." Bousley v. United States, 523 U.S. at 623, 118 S. Ct. at 1611. Notably, the Supreme Court has continued to apply the Schlup standard even after Bousley. See House v. Bell, 547 U.S. at 536-39, 126 S. Ct. at 2076-78 (applying the Schlup standard in 2006); Doe v. Menefee, 391 F.3d at 162 n.17 (refusing "to interpret Bousley as overruling Schlup."). Thus, while the Supreme Court noted that Bousley "need demonstrate no more than that he did not 'use' a firearm as that term is defined in Bailey" (Bousley v. United States, 523 U.S. at 624, 118 S. Ct. at 1612), Schlup still required that he demonstrate it through new evidence.

Accordingly, Sanchez's actual innocence claim fails because "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Schlup v. Delo, 513 U.S. at 316, 115 S. Ct. at 861; accord, e.g., Celaj v. Artuz, 49 F. App'x 331, 334 (2d Cir. 2002) (quoting Schlup), cert. denied, 538 U.S. 912, 123 S. Ct.

1495 (2003); <u>Lasso-Reina</u> v. <u>Haponick</u>, 05 Civ. 8817, 2009 WL 3334843 at *9 (S.D.N.Y. Oct. 14, 2009) ("Moreover, the petitioner is expected to establish actual innocence based on new evidence rather than what was presented at trial."); <u>Fernandez</u> v. <u>Artus</u>, 07 Civ. 2532, 2009 WL 1586271 at *15 (S.D.N.Y. June 8, 2009) (Peck, M.J.) ("To claim actual innocence, a petitioner must show more than the prosecution's evidence was weak or even insufficient; rather, he must present new evidence (such as DNA evidence) of his innocence.").  Indeed, based on Sanchez's own testimony at trial that he stabbed the victim, causing his death, Sanchez is not "actually innocent" of a crime (even if the evidence were insufficient to prove depraved indifference under the new <u>Feingold</u> standard, Sanchez is guilty of some crime).

## <u>CONCLUSION</u>

For the reasons set forth above, Sanchez's habeas petition should be <u>DENIED</u>.[60/]

---

[60/]   Were a reviewing court to disagree with this Report and Recommendation and conclude that Sanchez's habeas petition should be granted, the appropriate relief would be to direct the State to retry Sanchez within 30 days or modify Sanchez's conviction to the lesser included offense of second degree manslaughter, as Sanchez's counsel had requested in state court proceedings.  (See Dkt. No. 2: Sanchez Pet. Ex. A-1: Stewart § 330.30 Aff. at 7, discussed at pages 13-14 above; see also Sanchez Pet. Ex. B-2: State 1st Dep't Br. at 23; Sanchez Pet. Ex. B-3: Sanchez 1st Dep't Reply Br. at 3 ("[T]he only appropriate remedy would be to reduce [Sanchez's] conviction to second degree manslaughter under N.Y. Penal Law § 125.15.");  That remedy has been applied by the New York courts in cases finding insufficient evidence of depraved indifference murder.  See, e.g., People v. Atkinson, 7 N.Y.3d 765, 766, 819 N.Y.S.2d 858, 859 (2006) (reducing conviction to second degree manslaughter because defendant "did not commit depraved indifference murder within the meaning of the statute."); People v. Dudley, 31 A.D.3d 264, 265, 819 N.Y.S.2d 237, 239 (1st Dep't) ("Since the evidence supports a conviction of manslaughter in the second degree, a lesser charge defendant requested at trial, we reduce defendant's conviction accordingly."), appeal denied, 7 N.Y.3d 866, 824 N.Y.S.2d 611 (2006); People v. McMillon, 31 A.D.3d 136, 141, 816 N.Y.S.2d 167, 172 (2d Dep't) ("[D]epravity and indifference to human life are not
(continued...)

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, 500 Pearl Street, Room 2260, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Castel (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

---

60/    (...continued)
elements of the lesser-included offense of manslaughter in the second degree. Hence, if an appellate court concludes that a conviction of depraved indifference murder cannot stand, not because the evidence establishes a 'manifest intent to kill,' but because it fails to establish the requisite level of depravity and indifference to human life necessary for the commission of the crime, the court may apply the corrective action of modifying the judgment 'by changing it to one of conviction for the lesser offense.'"), appeal denied, 7 N.Y.3d 815, 822 N.Y.S.2d 490 (2006); cf. C.P.L. § 470.15(2)(a) ("Upon a determination that the trial evidence adduced in support of a verdict is not legally sufficient to establish the defendant's guilt of an offense of which he was convicted but is legally sufficient to establish his guilt of a lesser included offense, the [intermediate appellate] court may modify the judgment by changing it to one of conviction for the lesser offense."). The maximum sentence for second degree manslaughter is an indeterminate sentence from five to fifteen years imprisonment. See Penal Law §§ 70.00(2)(c) & (3)(b), 125.15.

84

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:     New York, New York
            March 16, 2011

Respectfully submitted,

_____

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Matthew L. Mazur, Esq.
            Justin J. Braun, Esq.
            Judge P. Kevin Castel

H:\OPIN\SANCHEZ-Steven